**The UNITED STATES GOVERNMENT,
Petitioner,**

v.

**William J. MARKS, Sr., Respondent.**

No. 95–1257.

Supreme Court of Texas.

Argued Sept. 4, 1996.

Decided July 9, 1997.

321

Morris Harrell, Jerry K. Warren, Cynthia Keely Timms, Dallas, Kenneth W. Starr, Steven M. Colloton, Washington, DC, for Petitioner.

H. Campbell Zachry, Drew R. Heard, Van VanBebber, Robert E. Davis, Dallas, for Respondent.

HECHT, Justice, delivered the opinion of the Court, joined by PHILLIPS, Chief Justice, CORNYN, OWEN and ABBOTT, Justices.

This difficult case requires balancing the government's interest in law enforcement against the interests of private parties and the public in open court proceedings. The issue is whether a judge may ever allow a government prosecutor's disclosure of legally confidential, grand-jury-related information offered in support of the government's position in a judicial proceeding to be made *in camera* and *ex parte* and order the record sealed. We hold that such procedure can be used in extraordinary circumstances and that it was properly employed in this case. We reverse the court of appeals, which reached the contrary conclusion. 910 S.W.2d 73.

## I

When the Office of Independent Counsel of the United States Government informed William J. Marks, Sr. about August 31, 1994, that he was a target of a federal grand jury investigation concerning his income tax returns, he attempted to obtain information and documents from his former accountant, Stephen Feldman. Feldman, a witness in the investigation, refused to cooperate with Marks. A few weeks later, on October 6, 1994, Marks filed a petition to depose Feldman pursuant to Rule 187, TEX.R. CIV. P., which authorizes a court to order the taking of a deposition to perpetuate testimony in anticipation of litigation.

In his petition Marks asserted that he had been threatened with action by the Internal Revenue Service and contemplated suing Feldman for malpractice. Although Rule 187(1) requires that a petition state "the names and residences, if known, or a description of the persons expected to be interested adversely to petitioner", Marks' petition neither mentioned the OIC or the federal grand jury nor alluded to the ongoing criminal investigation he knew he was a target of. Although Marks argues that his deposition of a witness for purposes of a prospective civil action had no bearing on the criminal investigation, the petition requested that Feldman be required to produce "any and all documentation evidencing, referring or relating to any oral and/or written communications by and between the deponent and third parties relating to the tax returns". While any connection between such documents and Marks' possible malpractice lawsuit against Feldman is not immediately apparent, the connection between the documents and the criminal investigation is obvious.

Rule 187(2) requires fifteen days' notice of a hearing on the petition to the witness and all adverse parties but provides "that in any case where justice or necessity so requires the judge or justice may permit the taking of such depositions upon shorter notice". Marks requested a hearing on shorter notice, alleging that he feared important documents might be destroyed, that the Internal Revenue Service had threatened action against him by November 15, 1994, and that Feldman's death was imminent. After an *ex parte* conference with Marks' counsel, the district judge set a hearing for October 10. Feldman was not served until October 8, a Saturday, and was not able to obtain legal counsel in time for the Monday hearing, so he did not attend. With only Marks' counsel present and without hearing evidence concerning any of the exigencies that Marks alleged, a visiting judge ordered Feldman to appear for his deposition on October 13.

Marks served Feldman with notice of the order on October 11. The next day, Feldman, having obtained counsel, moved to vacate the order for the deposition. At a hearing on October 13 before a second visiting judge, Feldman obtained a six-day delay of the deposition until October 19. On October 14 Feldman filed an amended motion to vacate the order for the deposition and asked for a hearing on October 18. The same day Feldman notified the OIC of Marks' petition. This was the government's first knowledge of the petition.

The day of the hearing on Feldman's amended motion to vacate, the government filed a motion to intervene in the proceeding and a motion for reconsideration of the order

for Feldman's deposition. The OIC, Marks, and Feldman all appeared by counsel at the hearing, over which yet a third visiting judge presided. The court granted the government's motion to intervene over Marks' objection and heard extensive argument on the motion for reconsideration and the motion to vacate. Marks declined to offer evidence concerning Feldman's health, the destruction of documents, or the threatened action by the IRS. (The only action threatened against Marks was indictment by the federal grand jury.) The government urged that Feldman's deposition be delayed 90 days so as not to interfere with the federal grand jury investigation. OIC counsel offered to tell the court enough about the grand jury investigation to show how Feldman's deposition might hamper it, but she stated that she could not disclose the same information to Feldman, Marks, or anyone else because of Rule 6(e) of the Federal Rules of Criminal Procedure, which prescribes secrecy for grand jury proceedings. Over Marks' objection, the court agreed to hear OIC counsel in chambers, on the record, with a court reporter present, but outside the presence of Marks' and Feldman's attorneys.

Following the hearing the court ordered that Feldman submit to a physical examination within ten days and file a report signed by the examining physician. The order delayed Feldman's deposition 30 days if he was reported to be in bad health and 90 days if reported in good health, and provided that the government could request an additional delay to protect the integrity of its ongoing criminal investigation. The order also sealed the court reporter's record of the *in camera* hearing.

Marks sought relief by mandamus, first in the court of appeals and then in this Court. We denied leave to file on December 8, 1994. *Marks v. Hartman,* 38 TEX. SUP. COURT J. 117 (No. 94–1106, Dec. 8, 1994). Marks also appealed, but only from the sealing of the record of the *in camera* hearing. Meanwhile, Feldman's physician reported to the district court that Feldman was in good health, and consequently his deposition was delayed. On December 14, 1994, Marks sued Feldman in county court for breach of con-

tract, malpractice, breach of fiduciary duty, and conversion. The district and county courts continued to delay Feldman's deposition pending completion of the federal investigation.

About six months later, on June 7, 1995, the grand jury indicted Marks, Arkansas Governor Jim Guy Tucker, and a third person. *United States v. Tucker,* No. LR–CR–95–117 (D. Ark. filed June 7, 1995). The indictment remains pending. *See United States v. Tucker,* 78 F.3d 1313 (8th Cir.), *reh'g denied,* 82 F.3d 1423 (8th Cir.1996) (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 76, 136 L.Ed.2d 35 (1996). Once Marks was indicted, the government withdrew its opposition to Feldman's deposition. In August 1995, Marks took Feldman's deposition, during which Feldman asserted his privilege against self-incrimination under the Fifth Amendment.

Marks continues to assert that he is entitled to the record of the *in camera* hearing based on Rules 76 and 76a, TEX.R. CIV. P.; the state constitutional guarantee of due course of law, TEX. CONST. art. I, § 19; and the federal constitution guarantee of due process, U.S. CONST. amend. XIV, § 1. (In the court of appeals Marks also relied on the state constitutional guarantee to open courts, TEX. CONST. art. I, § 13, but he does not do so here.) The court of appeals agreed with all Marks' claims and ordered disclosure of the record because "the general law does not support the government's assertion that the secrecy of grand jury investigations required an ex parte-in camera hearing in this case", and "the ex parte-in camera hearing the trial court held in this proceeding violates both the United States and Texas Constitutions, Texas rules and case law." 910 S.W.2d 73, 78.

Because of the obvious importance of the issues presented, we granted the government's petition for writ of error, 39 TEX.SUP. CT.J. 451. At our request, the district court delivered to us the sealed record, which was not included in the appellate record, and we have reviewed it.

## II

Marks appealed pursuant to Rule 76a(8), TEX.R. CIV. P., and he and the government agree that this appeal is governed by Rule 76a. That rule provides that "court records", as defined in the rule, can be sealed only by following specified procedures. Since those procedures were not followed in this case, the record of the *in camera* hearing should not have been sealed if it is a "court record" under the rule.

Rule 76a(2) states:

For purposes of this rule, court records means:

(a) all documents of any nature filed in connection with any matter before any civil court, except:

\*　　\*　　\*　　\*　　\*　　\*

(2) documents in court files to which access is otherwise restricted by law. . . .

We assume, since the parties do not argue otherwise, that a transcription of oral statements in a proceeding is "filed" or "in [a] court file[ ]" for purposes of the rule. The question, then, is whether access to the record is restricted by law.

■ The government rests its argument for an affirmative answer on Rule 6(e) of the Federal Rules of Criminal Procedure, which provides in part:

(2) General Rule of Secrecy. . . . [A]n attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule.

\*　　\*　　\*　　\*　　\*　　\*

(3) Exceptions.

(A) Disclosure otherwise prohibited by this rule . . . may be made to—

\*　　\*　　\*　　\*　　.\*　　\*

(ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

Under Rule 6(e), "the scope of the secrecy is necessarily broad. It encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.' " *Fund for Constitutional Gov't v. National Archives & Records Serv.,* 656 F.2d 856, 869 (D.C.Cir.1981) (quoting *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.)) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). *Accord: Church of Scientology Int'l v. United States Dept. of Justice,* 30 F.3d 224, 235 (1st Cir.1994); *Standley v. Department of Justice,* 835 F.2d 216, 218 (9th Cir. 1987).

■ The sealed record in this case contains statements that are clearly not within the scope of secrecy because they concerned matters that were either already within Marks' knowledge or were unrelated to the grand jury's investigation. However, the record also contains statements that relate directly to the grand jury's investigation. OIC counsel advised the district court what documents had been produced before the grand jury, who was being investigated, what charges were being considered, and how Feldman's deposition would affect the investigation. These statements plainly concerned "the identities of witnesses", "the strategy or direction of the investigation", "and the like"—all subjects protected by Rule 6(e).

To the extent the sealed record contained information protected by Rule 6(e), it is not a "court record" under Rule 76a(2)(a)(2), and thus sealing of those portions of the record does not violate Rule 76a. However, as counsel for the government conceded in oral

argument, statements in the record not protected by Rule 6(e) should not have been sealed. The record contains statements that are clearly not protected by Rule 6(e). The district court should have determined what statements were confidential before it sealed the record (giving the government an opportunity to respond, of course), instead of simply sealing the entire transcription. We have concluded, after reviewing the record, that we can make this necessary determination without remanding the case to the district court.

### III

Even though portions of the record were properly sealed under Rule 76a, Marks argues that allowing OIC counsel to confer with the district court *ex parte* and sealing the record violates his federal constitutional right to due process, his state constitutional right to due course of law, and Rule 76 of the Texas Rules of Civil Procedure.

Before considering these arguments, we note that the law in this State, as in most jurisdictions, looks upon *ex parte* proceedings with extreme disfavor. Judges are forbidden to "initiate, permit, or consider" *ex parte* communications except in carefully defined circumstances. TEX.CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 1997). Lawyers are prohibited from *ex parte* communications with judges intended to influence consideration of a matter, again, except in specified instances. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997) (TEX. STATE BAR R. art. X, § 9). Our procedural rules allow *in camera* inspections of documents to determine claims of privilege. TEX.R. CIV. P. 166b(4). The rules also permit affidavits to be considered *in camera* in various instances. *Barnes v. Whittington*, 751 S.W.2d 493, 495 n. 1 (Tex. 1988). But we have refused to allow affidavits in support of privilege claims to be submitted *in camera*. *Id.*; *Remington Arms Co. v. Canales*, 837 S.W.2d 624, 626 n. 3 (Tex.1992); *State v. Lowry*, 802 S.W.2d 669, 671 n. 2 (Tex.1991). We have also refused to allow documents to be submitted *in camera*

in support of a claim for discovery sanctions. *Global Servs., Inc. v. Bianchi*, 901 S.W.2d 934, 938 (Tex.1995).

Confrontation is a crucial element of an adversarial system of justice, but as with most such elements, it is not absolute; it must be balanced against competing elements of similar stature. The issue in this case is whether constitutional due process guarantees and the rules of procedure allow any denial of a person's right to be present in civil proceedings in which he is a party in order to protect the integrity of a criminal investigation. If so, then the circumstances must be carefully circumscribed.

### A

The federal courts have uniformly rejected arguments that an *in camera* inspection of grand jury materials violates a party's federal due process rights. *In re Grand Jury Proceedings*, 33 F.3d 342, 351–353 (4th Cir. 1994); *In re John Doe, Inc.*, 13 F.3d 633, 635–637 (2d Cir.1994); *In re Grand Jury Proceedings*, 867 F.2d 539, 540–541 (9th Cir. 1989); *In re Antitrust Grand Jury*, 805 F.2d 155, 161–162 (6th Cir.1986); *In re Eisenberg*, 654 F.2d 1107, 1111–1113 (5th Cir.1981). *Eisenberg* involved circumstances similar to the present case. Eisenberg petitioned to depose a Scotland Yard agent in anticipation of litigation. The United States opposed the petition on the grounds that it would interfere with a federal grand jury investigation and would harm foreign relations. After considering grand jury materials and other confidential documents and an affidavit of the United States Attorney, all submitted by the government *in camera*, the district court delayed the requested deposition. The court of appeals held that Eisenberg's due process rights had not been violated. *Id.*

█ Whether oral statements made by counsel *in camera* and *ex parte* should be treated differently than documents or affidavits has not been considered in any case cited by the parties here. Oral statements *in camera* present a greater threat to due process because the excluded party must rely on the court and its reporter to make a record of what transpired. There is more danger that statements made to the court may be

omitted from the record than that documents reviewed by the court will not be placed in the sealed record. The difference, however, is one of degree. The safer course for the court is to consider only written materials *in camera*, but there may be instances, as in this case, when the court finds it useful to question counsel. Hearing oral statements *in camera* of which a record is made is not so unlike reviewing written materials as to violate due process.

In the present case the district court required its reporter to make a record of all that occurred in chambers. Following the consistent holdings of federal cases, we conclude that this procedure did not violate Marks' federal constitutional rights.

**B**

■ "[I]n matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues" in applying our state constitutional guarantee of due course of law. *University of Texas Medical School v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Procedural due process is a flexible concept. What process is due depends on a consideration of three factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 930.

■ In this case, Marks' interest in taking Feldman's deposition immediately was small, given that Feldman was found to be in good health and there was no evidence that documents were in danger of being destroyed. The risk of an erroneous ruling on Marks' petition was not greatly increased by the district court's hearing argument by OIC counsel *in camera*. On the other hand, the government's interest in preserving the integrity of the grand jury proceeding was very important. On balance, Marks' rights were fully protected by the making of a record reviewable on appeal. The district court's procedure did not violate Marks' state constitutional right to due course of law.

**C**

■ Finally, Marks argues that sealing the transcript violated Rule 76 of the Texas Rules of Civil Procedure, which states: "Each attorney at law practicing in any court shall be allowed at all reasonable times to inspect the papers and records relating to any suit or other matter in which he may be interested." This general rule is not absolute. Although not stated in the rule, there are exceptions, such as documents submitted *in camera* under a claim of privilege, documents subject to a protective order, or materials sealed under Rule 76a. Rule 76 does not give Marks an absolute right to the transcript of the *in camera* hearing.

**IV**

**A**

The dissent agrees that "*ex parte* communications are sometimes necessary in extraordinary, exigent situations", *post* at 329, and does not dispute that circumstances like those in this case *could* present such a situation. The dissent argues only that the government failed to prove that OIC counsel's *in camera* statements about the federal grand jury proceedings were true because OIC counsel did not make them under oath.

In the district court, Marks' counsel at first stated that he was "not suggesting that [OIC counsel] go under oath", but then added, "We would object to the whole process. We certainly think it should be under oath if it's going to take place." Marks has not argued, either in the court of appeals or in this Court, that OIC counsel's statements about the grand jury proceeding were any less revelatory because counsel was not sworn. Marks' argument on appeal has been that the *ex parte* proceeding should never have been conducted, not that the government has failed in its burden of proof.

■ While it is true that an attorney's unsworn statements are not evidence, it is not true, as the dissent suggests, that they

have no special significance. For example, we held earlier this year that in a hearing to determine whether peremptory challenges to venirepersons were racially motivated, "[u]nsworn statements of counsel may be offered to explain why the peremptory challenges were exercised." *Goode v. Shoukfeh,* 943 S.W.2d 441 (Tex.1997). Reliance on counsel's statements is justified by Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct, which forbids a lawyer from making a false statement of material fact to a tribunal, and from failing to disclose unprivileged facts necessary to an informed decision in an *ex parte* proceeding. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997) (TEX. STATE BAR R. art. X, § 9.) Given the ethical canons' requirement of candor and our acceptance of unsworn statements of counsel in a similar proceeding, we believe the district court here was entitled to rely on OIC counsel's representations in this case.

The dissent also argues that "the government has failed to justify keeping the record sealed in perpetuity", but this misstates the government's burden. The sole issue before us is whether the district court's sealing order was proper at the time it issued on the record before that court. Rule 76a permits a sealing order to be challenged at any time, although persons with actual notice of the original order, like Marks, cannot request reconsideration "without first showing changed circumstances materially affecting the order." TEX.R. CIV. P. 76a(7). Our decision today does not, of course, preclude such a showing.

### B

We thus conclude that the district court's procedure did not violate Marks' constitutional rights or the rules of procedure. The district court acted reasonably in attempting to accommodate Marks' insistence on an immediate deposition of Feldman and the government's concerns that such a deposition would impede an ongoing criminal investigation, the details of which could not be disclosed. However, the district court's order was overly broad in sealing the entire record

rather than those portions that pertained to the grand jury proceeding. The transcription with those portions redacted will be released to the parties.

▮▮▮ The court of appeals taxed court costs against the government. Costs cannot be assessed against the government without permission from the Congress. *United States v. Idaho,* 508 U.S. 1, 6–7, 113 S.Ct. 1893, 1896–1897, 123 L.Ed.2d 563 (1993); *United States v. Hooe,* 7 U.S. (3 Cranch) 73, 90–91, 2 L.Ed. 370 (1805) (Marshall, C.J.). Marks argues that permission can be found in 28 U.S.C. § 593(f), which authorizes a target of an investigation by a special prosecutor to petition a federal court for attorney fees if he was never indicted. The statute is inapplicable. Costs are not attorney fees, Marks was indicted, and the court of appeals is not a federal court. Since Marks argues no other basis for the award of costs, it must be reversed.

\* \* \* \* \* \*

Accordingly, the judgment of the court of appeals is reversed and judgment is rendered modifying the district court's sealing order to cover only the following portions of the record: 4:20–5:11; 6:8–22; 7:25–10:8; 10:19–22; 12:16–14:2; 15:12–16:3; 16:16–17:5; 17:16–18:19; 19:17–21; 23:16–24:15; 25:15–17. The Clerk is directed to release to each party a copy of the record with these portions redacted, to maintain a redacted copy in the Clerk's file for public inspection, to transmit a redacted copy to the District Court, and to return the original sealed record to the District Court under the original seal. As modified, the district court's order is affirmed.

BAKER, J., did not participate in the decision.

GONZALEZ, Justice, filed a concurring and dissenting opinion in which ENOCH and SPECTOR, Justices, join.

Today, the Court protects from disclosure nearly a third of the sealed transcript of a lawyer's in-chambers, *ex parte* argument and instructs our clerk to release the redacted copies of the transcript. By unsealing two-thirds of the record, the Court tacitly ac-

knowledges that the bulk of the government attorney's *ex parte* argument could have been made in open court and therefore was improper. The court of appeals characterized the hearing behind closed doors as a "Star Chamber" proceeding and ordered the entire transcript unsealed. 910 S.W.2d 73. I too would unseal the entire record because *of the utter lack of evidence to justify such a* highly irregular and disfavored procedure.[1] I concur only in the Court's holding that the court of appeals should not have assessed costs against the government.

Without evidence of any kind, we have only the government attorney's conclusory statement that she was revealing grand jury secrets protected by Rule 6(e) of the Federal Rules of Criminal Procedure. Her unsworn statements are not enough to prove the government's privilege, and therefore the government cannot justify excluding Marks's counsel from the proceeding. Because the *ex parte* proceeding was improper, sealing the record afterwards cannot be sustained. Certainly, the government has failed to justify keeping the record sealed in perpetuity.

An understanding of the events of that October 18, 1994 hearing is necessary to appreciate the issues involved. Judge David Cave was the third judge to hear this matter. Judge Ted Akin had granted Marks's request to perpetuate testimony by deposition. Judge John Whittington heard and overruled Feldman's motion to quash the deposition. The court had scheduled a hearing for October 18 to consider Feldman's motion to reconsider. At the beginning of the hearing, the government presented its motion for intervention, a motion for reconsideration of the order to perpetuate testimony, a motion for the attorney to appear in a Texas court *pro hac vice*, and an affidavit in support of the *pro hac vice* motion. The motion to intervene alleges that the Office of Independent Counsel told both Feldman and Marks that it and the grand jury were investigating:

> possible criminal violations connected to Mr. Marks's federal income tax returns.

The matters under criminal investigation appear to be the same as those identified [in Marks's] Verified Petition as subjects upon which Mr. Marks seeks to depose Mr. Feldman.... The documents that Petitioner seeks to compel Mr. Feldman to produce also relate directly to matters that the Petitioner and his counsel have been notified are encompassed by the Independent Counsel's investigation.

In open court, the government attorney represented that Marks is a target in the investigation and that Feldman is at least a witness.

The government asked for an *ex parte* hearing to present its reasons for delaying the deposition. The court agreed to conduct the hearing in chambers, excluding the other attorneys. When the court started to swear in the government attorney, however, she argued that it was not necessary. Over Marks's strenuous objection, the government attorney was not sworn before retiring to chambers.

During the *ex parte* proceeding, the government attorney argued matters clearly not protected by grand jury secrecy, as our Court recognizes by unsealing roughly two-thirds of the statement of facts. For example, she argued that Feldman seemed fairly healthy, so Marks had no immediate need to perpetuate his testimony. In the course of her argument, the government attorney mentioned, as the Court puts it, "what documents had been produced before the grand jury, who was being investigated, what charges were being considered, and how Feldman's deposition would affect the investigation." 949 S.W.2d at 324. She did so, however, in very vague terms. She did not state the basis of her knowledge, her role in the investigation, or how long she had worked on the case. The basis of her statements seems to be, "I'm with the government; you can trust me on this one, Judge."

1. The statement of facts of the *in camera* hearing at issue in this appeal was never made a part of the appellate record. I alone dissented from the Court's decision to order supplementation. I

would have reviewed the record as it was filed for reversible error. (Gonzalez, J., dissenting.) My view did not prevail, however, and I accept the Court's decision as the law of the case.

Before returning to the courtroom, the trial judge used the government's attorney as its messenger to ask questions of the excluded attorneys. When the judge and the government attorney returned to the courtroom, the court granted the government all of the relief it requested. No evidence was introduced at any point in the proceeding. Thus, it is clear that the court reversed the decision of two prior judges based solely on the private argument in chambers.

Perhaps there is no greater threat to the public's confidence in an independent and honorable judiciary than the perception that one party has special access to the court. *See In re Thoma,* 873 S.W.2d 477, 496–500 (Tex.Rev.Trib.1994). Judges "shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." Tex.Code Jud. Conduct, Canon 3(B)(8) (1994). For that reason the Texas Code of Judicial Conduct demands that a judge shall not permit *ex parte* communications concerning the merits of a pending judicial proceeding "except as authorized by law." *Id.* Canon 3(B)(8)(e). They are never proper merely to "gain the final word during judicial deliberations." *Remington Arms Co. v. Canales,* 837 S.W.2d 624, 626 n. 3 (Tex.1992). Yet *ex parte* communications are sometimes necessary in extraordinary, exigent situations. *Barnes v. Whittington,* 751 S.W.2d 493, 495 n. 1 (Tex.1988).

Because of the extreme dangers inherent in *ex parte* proceedings, they must be conducted with strict procedural safeguards. It is imperative that a court make a statement of facts of the hearing, as this court did. Moreover, the court must continually evaluate whether compelling, exigent circumstances justify continuing the proceeding *ex parte.* I would hold that the *ex parte* communicant has the burden of establishing that the circumstances warrant proceeding in chambers.

Moreover, at the end of the presentation, the court must evaluate whether the record of the proceeding may be sealed. A court must be especially vigilant when the motion to seal is opposed by a party excluded from the room. Because of the extreme hazards

in proceeding *ex parte,* I would hold that the record of the proceedings may be sealed only if the communicating party has put into the record facts that establish compelling, exigent circumstances. The record must be sufficient so that an appellate court may make a reasoned determination whether the *ex parte* proceeding and the trial court's sealing order were abuses of discretion. The record in this case makes such a determination impossible.

As mentioned, no one introduced any evidence in this hearing, either in open court or in chambers. The Court could only have reached its conclusion by accepting the government lawyer's arguments at face value. However, it is axiomatic that, absent waiver, unsworn statements by an attorney are not evidence. *See, e.g., Goode v. Shoukfeh,* 915 S.W.2d 666, 671 (Tex.App.—Amarillo 1996), *aff'd on other grounds,* 943 S.W.2d 441 (Tex. 1997); *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70, 71 (Tex.App.—Austin 1990, no writ); *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530, 533 (Tex.App.—San Antonio 1988, writ denied); *accord United States v. Livingston,* 816 F.2d 184, 196 (5th Cir.1987). The Court agrees, but argues that the lawyer's statements may be given "significance," analogizing to our opinion in *Goode,* which concerned peremptory strikes. But the Court is selective in its quote from *Goode,* when it says, " '[u]nsworn statements of counsel may be offered to explain why the peremptory challenges were exercised.' " 949 S.W.2d at 327 (quoting *Goode v. Shoukfeh,* 943 S.W.2d 441, 451 (Tex.1997)). In context, we said:

Consideration of an *Edmonson [v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)] challenge is by its very nature adversarial. Further, this Court has often held that *ex parte, in camera* procedures are disfavored. *See, e.g., Remington Arms Co. v. Canales,* 837 S.W.2d 624, 626 (Tex.1992). Accordingly, at a minimum, the proceedings should be held in open court. Unsworn statements of counsel may be offered to explain why the peremptory challenges were exercised.

*Goode,* 943 S.W.2d at 451. It is one thing to give significance to statements in open court, in which the protections of adversarial proceedings provide some balance. It is quite another to give decisive "significance" to statements made behind closed doors. In *Goode,* we held that while an attorney exercising peremptory strikes may give unsworn statements about the reasons for exercising the strikes, the opposing party is entitled to rebut those statements, and may cross-examine the attorney exercising the strikes under oath. *Id.* at 452. How was Marks to rebut what was said in this trial court's chambers?

The Court takes comfort in the fact that the Texas Rules of Professional Conduct apply to the government's attorney. I assume she took seriously her duties as an officer of the court *pro hac vice.* I must also assume, however, that she zealously represented her client, asserting the broadest application of the grand jury privilege as good conscience would allow. Moreover, ethical rules provide no protection against the possibility that the government attorney was simply wrong about what was and was not a grand jury secret. Since the attorney never stated the basis of her knowledge, no court can judge the reliability of her statements.

For the same lack of proof, the government utterly failed to establish that its attorney's arguments were protected by Rule 6(e) of the Federal Rules of Criminal Procedure. I agree that the Rule creates a privilege for grand jury secrets. I further agree in the abstract that preserving the confidentiality of grand jury proceedings could provide compelling circumstances for sealing the record. However, as the court of appeals noted, "Grand jury secrecy is no magical incantation making everything connected with the grand jury's investigation somehow untouchable." 910 S.W.2d at 77 (citing *In re September 1971 Grand Jury,* 454 F.2d 580, 583 (7th Cir.1971)). Federal Rule 6 does not protect information that only potentially could come before a grand jury. *United States v. Eastern Air Lines,* 923 F.2d 241, 244 (2nd Cir. 1991); *In re Grand Jury Investigation,* 610 F.2d 202, 216 (5th Cir.1980). Information that is obtained independent of the grand jury process is not protected by Federal Rule 6. *In re Grand Jury Investigation,* 610

F.2d at 216. A prosecutor's strategy and actions outside the presence of a grand jury are not necessarily the same as a grand jury secret. *See id.* at 217 & n. 5 (report that Justice Department would not decide whether to seek indictment concerns only actions by the Justice Department, not the grand jury).

As these cases illustrate, whether something is a grand jury secret depends on the facts of the case. By accepting the attorney's *ex parte* statements uncritically, the Court places the burden on Marks to disprove the grand jury privilege. However, our discovery rules have always placed the burden on the party seeking to protect information from discovery to establish the privilege. *See* TEX.R. CIV. P. 166b(4); *Loftin v. Martin,* 776 S.W.2d 145, 148 (Tex.1989); *Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986). Similarly, the government should have the burden of putting into the record such underlying facts as would permit the judge to reasonably determine that the information cannot be disclosed without compromising a grand jury investigation.

The Court today suggests that this sort of thing goes on all the time. In every case it cites, however, the *ex parte* proceeding included the presentation of evidence. For example, in the case the Court principally relies upon, *In re Eisenberg,* 654 F.2d 1107 (5th Cir.1981), the appellant sought to perpetuate testimony in anticipation of litigation under the federal rules by deposing an agent of Scotland Yard. The government intervened and offered affidavits and other documents *ex parte* in opposition to the deposition. *Id.* at 1112. Neither *Eisenberg* nor any other case cited by the Court involved a government attempt to influence a decision based solely on unsworn arguments made in chambers.

The sealed transcript here is devoid of any facts upon which the trial judge could make reasonable determination of the need to maintain secrecy. The Court has no basis for evaluating whether any of the statements by the government's attorney at this *ex parte* hearing revealed or tended to reveal any

matters that had occurred before the grand jury.

The Court gives lip service to the rules against *ex parte* proceedings. It states that the circumstances for denying a party the right to be present "must be carefully circumscribed." 949 S.W.2d at 325. The Court then places no demands on the government to justify the secret argument in this case. In my opinion, the entire *ex parte* proceeding, without any evidence in the case to justify it, was an improper attempt to influence the Court's decision. I would therefore order unsealed the entire record of the proceedings in chambers.