

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-91,688-01

## IN RE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Relator

## ON PETITION FOR A WRIT OF MANDAMUS
## CHALLENGING TRIAL COURT'S DISCOVERY ORDERS
## IN CAUSE NO. 27347 FROM THE 278TH JUDICIAL DISTRICT COURT
## WALKER COUNTY

**SLAUGHTER, J., filed a dissenting opinion.**

## <u>DISSENTING OPINION</u>

Pursuant to Code of Criminal Procedure Article 11.071, does a trial judge clearly lack authority to enter an order compelling discovery from a nonparty to facilitate a capital habeas applicant's investigation of possible claims? The Court answers this question 'yes' and holds that the trial judge here was clearly and indisputably without authority to issue such an order compelling the Texas Department of Criminal Justice (TDCJ) to turn over certain specified records to the Real Party in Interest, capital habeas applicant John Ray

Falk, Jr., who was at the time in the process of preparing his initial Article 11.071 habeas application. The sole justification provided by the Court for this conclusion is its recent decision in *In re City of Lubbock,* in which it held in the distinguishable context of a criminal prosecution that a trial judge clearly lacked authority to "hold an *ex parte* hearing and enter an *ex parte* order compelling a third party to produce documents without notice to the prosecutor representing the State." *See* 666 S.W.3d 546, 548 (Tex. Crim. App. 2023). I dissented in *In re City of Lubbock*, and I also disagree with the Court's approach here. The Court's analysis in *In re City of Lubbock* does not persuasively show that the court's order here is so clearly in conflict with *well-settled* legal principles as to satisfy our demanding mandamus standard. *See Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011) (providing that to justify mandamus relief, "the facts and circumstances [must] dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles"). Contrary to the Court's reasoning, the matter of a trial judge's authority to issue an order facilitating the investigation of possible claims under Code of Criminal Procedure Article 11.071 is not remotely well-settled—and this is true notwithstanding the Court's general observation in *In re City of Lubbock* that *ex parte* orders are disfavored in criminal proceedings. In short, Relator has failed to establish a clear right to relief here because the law on this question is unsettled. There is no binding authority that clearly conflicts with the trial court's actions, and indeed some authority supports the propriety of the trial court's order

as a means of ensuring that capital habeas applicants receive a full and fair opportunity to litigate their post-conviction claims. Therefore, I dissent from the Court's judgment conditionally granting mandamus relief to Relator.

## I.        Procedural History

In 2017, John Ray Falk, Jr., was convicted of capital murder and sentenced to death. The offense arose from the killing of a prison guard during Falk's attempt, along with a co-defendant, to escape from custody. Following Falk's conviction, in February 2018, the Office of Capital and Forensic Writs (OCFW) was appointed to represent Falk in his initial Article 11.071 habeas proceedings. In April 2020, Falk's counsel filed an "*Ex Parte* Motion to Compel Release of TDCJ Records of Trial Witnesses." Specifically, OCFW sought access to "any and all records pertaining to" seven specified inmates. OCFW stated that the inmates were eyewitnesses to the offense and had testified either at Falk's first or second trial[1] or at the trial of his co-defendant. OCFW asserted that these records were "material and relevant to potential claims" that Falk may raise in his initial habeas application, specifically with respect to "whether any inmates discussed, requested, received, or were offered a promise of consideration, in any way, in exchange for testimony inculpating Mr. Falk and/or his co-defendant[.]"

On April 23, 2020, the trial judge entered his first order directing TDCJ to turn over the requested records. Upon receipt of the order, counsel for TDCJ contacted Falk's

---

[1] Falk's 2017 trial was a retrial after an earlier mistrial in this case.

counsel and informed them of TDCJ's position that the request was overly burdensome. OCFW then agreed to limit the date range to a specific thirteen-year period. Following this exchange, on May 5th, the trial court signed a revised order reflecting the agreed-upon date range. The order required TDCJ to provide "access to any and all information in its possession, from January 1, 2007 to the present day," pertaining to the seven specified inmates, "specifically including, but not limited to:"

- "Any and all unit files, Classification Committee reports, visitation files, and disciplinary and adjudication files;"

- "Any and all information regarding unit or housing assignments during any period of incarceration in TDCJ;"

- "Any and all records of any instance in which" the specified individuals "offered to provide information inculpating any other individual in any criminal or disciplinary case;" [and]

- "Any and all records of any communications between TDCJ and any member of the Walker County Sheriff's Office, the Huntsville Police Department, the Walker County District Attorney's Office, the Office of the Inspector General, the Attorney General's Office, the Department of Public Safety, or any other law enforcement agency" regarding the specified individuals.

The court set an initial deadline of May 20, 2020, for TDCJ to comply with its order. TDCJ later obtained an extension until June 22, 2020.

On June 15, 2020, after the Office of the Attorney General took over TDCJ's representation in this matter, TDCJ filed a motion to set aside the trial court's order. In its motion, TDCJ contended that the trial court lacked authority under Article 11.071 to enter the order, or, alternatively, that the request for records was overly burdensome, lacking in

relevance, and vague. On June 24th, TDCJ filed an additional pleading in which it urged that the trial court also lacked jurisdiction to enter any such orders before an Article 11.071 application has actually been filed. OCFW filed responses asserting that the trial court's order was necessary in furtherance of its statutory duty to fully investigate all possible post-conviction claims. *See* TEX. CODE CRIM. PROC. ART. 11.071, § 3(a) ("On appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus.").

On July 30th, the trial court held a hearing on the matter. After hearing arguments from OCFW and TDCJ, the court determined that it had both authority and jurisdiction to enter the order in question and that the request was not overly burdensome. Thus, it overruled TDCJ's objections and entered an order enforcing its May 5th order, with a new deadline of August 14, 2020.[2]

On August 11th, TDCJ filed a motion asking this Court to stay the trial court's orders in anticipation of its filing of a petition for a writ of mandamus. This Court granted a stay of the orders and, on August 28th, TDCJ filed the instant petition seeking to compel the trial judge to vacate his orders. OCFW filed its response to the petition on September 2nd. This Court has neither requested nor received a response from the Respondent trial

---

[2] The parties' motions, as well as the trial court's May 5 and July 30 orders, were all filed under seal.

judge.

On September 3, 2020, OCFW timely filed Applicant's initial Article 11.071 application. Because OCFW had not received the requested records from TDCJ by the filing deadline, OCFW filed a motion in this Court seeking the ability to amend the application after the filing deadline upon eventual receipt of the materials. On October 20, 2020, this Court denied the motion without written order. Applicant's Article 11.071 application remains pending at this time.[3]

This Court then filed and set this mandamus case to consider whether the trial judge clearly lacked authority to compel TDCJ to turn over records to Applicant prior to the filing of his Article 11.071 application.[4]

---

[3] On October 28, 2020, OCFW filed a "Motion to Dismiss Petition for Writ of Mandamus as Moot; Alternatively, Motion for Briefing and Oral Argument." In its motion, OCFW noted that the issue TDCJ originally raised was "whether the 278th District Court possessed jurisdiction and authority to enter [a discovery] order . . . *when no application for a writ of habeas corpus had been filed*[.]" *See* Petition for Writ of Mandamus of TDCJ, at 4 (emphasis added). Now that Falk has filed his initial Article 11.071 application, OCFW contends that "TDCJ's jurisdiction and authority concerns are now remedied and therefore are nonjusticiable," as it is now "indisputable that the habeas court certainly has authority and jurisdiction to enter an order like the one at hand after Mr. Falk files his application." I agree with the Court's implicit determination that this matter has not been rendered moot as a result of the filing of the initial application. Relator's arguments in its petition make clear that it contests the validity of the trial court's order either before or after the filing of the initial application, and the order remains in effect at this time. Thus, OCFW is incorrect that there remains no live controversy in this case.

[4] The question presented is:

> Whether the 278th District Court possessed jurisdiction and authority to enter an *ex parte* order directing TDCJ, a non-party, to produce records for seven different offenders spanning thirteen years to OCFW for their pre-writ investigation under Section 3 of the Texas Code of Criminal Procedure Article 11.071 when no application for a writ of habeas corpus had been filed and when Article 11.071 does

**II.    *In re City of Lubbock* does not persuasively resolve the issue here.**

The primary dispute here centers on whether the trial court clearly lacked authority under Code of Criminal Procedure Article 11.071 to facilitate Applicant's investigation of potential post-conviction claims through a nonparty, pre-application discovery order. However, relying solely on its decision in *In re City of Lubbock*, the Court avoids that question entirely by holding that the only thing that really matters here is that the order in question was entered *ex parte*. I disagree with the Court's decision to summarily dispose of this case by relying on *In re City of Lubbock*. Even accepting, as the Court suggests, that the trial court's actions here would constitute *ex parte* proceedings when no application had yet been filed and thus no adversarial proceedings had commenced, the Court's analysis from *In re City of Lubbock* still does not persuasively resolve the issue here. That decision was flawed from the outset because it wrongly suggested that there can never be any discretionary exceptions to the general rule against *ex parte* proceedings. Moreover, that case is distinguishable because it dealt with a criminal trial, which is fundamentally different from a capital post-conviction habeas proceeding. Thus, it should not control the outcome here.

In *In re City of Lubbock*, after the real party in interest was charged with sexual assault of a child, he sought an *ex parte* order from the trial court compelling the Lubbock

___

not authorize a trial court to order discovery for writ counsel's pre-filing investigation.

Police Department to "provide all records" regarding J.G., a child, "including but not limited to: records where she was reported to be a child victim of sexual abuse" to the real party in interest's counsel.[5] In support, the real party in interest cited *Ake v. Oklahoma*[6] and *Williams v. State*.[7] and asserted that he should not be forced to reveal his defensive strategy to the State prior to trial. The trial court granted the motion and issued the order, but this Court later granted conditional mandamus relief against the trial judge and held that the order was clearly unauthorized. In reaching this conclusion, the Court cited the Texas Code of Judicial Conduct for the proposition that *ex parte* proceedings are categorically impermissible unless they have "express authorization." *In re City of Lubbock*, 666 S.W.3d at 556–59. It further rejected the real party in interest's arguments under *Ake* and *Williams* by holding that those cases are narrowly limited to their facts (i.e., situations involving *ex parte* requests for funding to obtain expert assistance) and cannot apply to "a general request for discovery." *Id.* at 559–64.

Whereas the Court's analysis in *In re City of Lubbock* focused extensively on the nature of *ex parte* proceedings and the rationale for broadly disfavoring them, I question at the outset whether the order in this case was truly entered *ex parte* in the traditional sense, such that it would fall under this general principle at all. Unlike the situation in *In re City*

---

[5] The trial court later issued a modified order requiring that the records be subject to an *in camera* inspection, rather than turned over to the real party in interest's counsel.
[6] 470 U.S. 68 (1985).
[7] 958 S.W.2d 186 (Tex. Crim. App. 1997).

*of Lubbock,* where criminal charges had already been filed against the defendant at the time of the discovery request there, here the Article 11.071 application had not yet been filed at the time of the trial court's order, and thus adversarial proceedings had not yet commenced. But the very definition of an *ex parte* proceeding is one "relating to, or involving court action taken or received by *one party without notice to the other*." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Given that the Article 11.071 application in this case had not yet been filed, it is questionable whether the State was truly a "party" to the proceedings at the pre-filing stage. As the Court noted in *In re City of Lubbock*, the rationale for disallowing *ex parte* proceedings is to "preserve judicial impartiality and ensure that all legally interested parties are given their full right to be heard under the law." *In re City of Lubbock*, 666 S.W.3d at 558. What justifiable legal interest can the State possibly have in knowing, at the pre-filing stage, what types of factual investigations appointed habeas counsel is pursuing? Because no application had been filed at the time the trial court entered the order in question, it is not at all clear that this situation should be treated as an *ex parte* proceeding in the same manner as the order at issue in *City of Lubbock*.

But, even accepting, as the Court suggests, that the order here was entered *ex parte*, I still disagree that *In re City of Lubbock* persuasively resolves the issue before us. That decision went astray by overstating the rule prohibiting *ex parte* proceedings, and the Court now errs by extending that principle as a basis for deciding this case. While *ex parte*

proceedings are generally "disfavored," *see id.*, ample authority indicates that a trial judge may, in narrow circumstances, have discretion to permit an *ex parte* hearing or communication, even if not "expressly" authorized, when some overriding interest justifies it. *See, e.g., United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir. 1987) (observing that, while *ex parte* proceedings are largely disfavored, "[t]here are, to be sure, occasional departures from this norm," usually involving "*some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification*, *ex parte* proceedings are anathema in our system of justice") (emphasis added); *United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir. 1987) (specifically addressing discovery and stating that, while "*ex parte* communications between the trial court and the prosecution in a criminal case are to be greatly discouraged and should be permitted only in very limited circumstances," the trial court has the "discretion to determine when and to what extent *ex parte* proceedings are appropriate in establishing . . . the limitations that ought to be placed on discretionary discovery"); *People v. Thompson*, 384 P.3d 693, 735 (Cal. 2016) (stating that while "[p]roceedings held in chambers and outside the presence of a party are generally disfavored . . . as a general rule, a trial court has *discretion* to conduct a proceeding in a defendant's absence to *protect an overriding interest that favors confidentiality*") (emphasis added, internal citations omitted); *see also id*. at 736 (recognizing that *ex parte* hearing "may be necessary to protect

a defendant's rights").[8] One of the questions before the Court in *In re City of Lubbock* was whether any such exception might apply to the circumstances presented there—but by misstating the rule as a categorical, bright-line rule barring *ex parte* proceedings in all situations, the Court improperly declined to reach that issue. Ultimately, whether such an exception applies to a particular fact pattern is the very type of discretionary determination that is generally not susceptible to mandamus. *See, e.g.*, *In re Allen,* 462 S.W.3d 47, 49–50 (Tex. Crim. App. 2015) ("A ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt."). This is particularly true in the absence of any authority *from this Court* indicating that a trial judge lacks discretion to proceed *ex parte* under some narrow circumstances when he deems it necessary to protect an overriding interest. It

---

[8] *See also People v. Valdez*, 281 P.3d 924, 958 (Cal. 2012) (*ex parte* proceedings are "permissible if compelling reasons justify them") (citations and quotation marks omitted); *State v. Harris*, 245 So.3d 1036, 1037 (La. 2018) (per curiam) (*ex parte* hearings "are generally disfavored with a few exceptions;" "in order to deviate from the general rule of open and contradictory hearings, there must be a showing of good cause"); *Barnes v. Whittington,* 751 S.W.2d 493, 495 n. 1 (Tex. 1988) (Texas rules and case law permit *ex parte* communications only in extraordinary, emergency situations); *U.S. Gov't v. Marks*, 949 S.W.2d 320, 322 (Tex. 1997) (holding that *ex parte* hearing "can be used in extraordinary circumstances").

To be clear, I recognize that the aforementioned cases are factually distinguishable from the circumstances presented here. The cases are cited for the general proposition that *ex parte* proceedings may be permissible in narrow circumstances when the court, *in its discretion*, deems it necessary to do so for a compelling or overriding reason. The existence of that principle rebuts the Court's position that any type of *ex parte* proceeding, to be permissible, must be "expressly authorized" (either by statute or by prior caselaw)—instead, the foregoing cases show that such assessments can in some situations be made on a case-by-case basis. This type of case-specific, discretionary determination is not susceptible to mandamus unless this Court has held under identical or very similar circumstances that the trial court's action is improper.

cannot seriously be contended that any such authority exists here to prohibit a trial judge from issuing an order without the State's knowledge to facilitate pre-application discovery in an Article 11.071 proceeding. In short, the general rule disfavoring *ex parte* proceedings is not even remotely adequate to resolve the novel issue presented here..[9]

But, setting aside this issue momentarily, there is another problem with the Court's reliance on *In re City of Lubbock*—whereas *In re City of Lubbock* involved a criminal prosecution and a criminal defendant's right to discovery, this case involves a statutorily authorized capital habeas proceeding under Code of Criminal Procedure Article 11.071. In *Ex parte Rieck*, this Court addressed the unique nature of a habeas corpus proceeding, observing that such a proceeding is "separate from the criminal prosecution—being a collateral, rather than direct, attack on the judgment of conviction." 144 S.W.3d 510, 516 (Tex. Crim. App. 2004). Further, *Rieck* recognized that courts in many jurisdictions have treated habeas corpus as "neither civil nor criminal but rather *sui generis*" or "an exercise

---

[9] While appearing to acknowledge that there may be "extraordinary, emergency, or limited and compelling circumstances in which an *ex parte* communication may be permitted," the Court's opinion nevertheless holds that the law is clear and indisputable that no such exceptions can apply here because this is a mere "general discovery request." *See* Maj. Op., at 3–4 n.7. I disagree with the Court's characterization of the nature of the request here. Applicant is under a sentence of death, and so by definition this is an "extraordinary matter." Further, OCFW sought the records in question pursuant to its investigation of possible *Brady*/false-evidence claims relating to inmates housed by TDCJ, and it initially sought those records through a public-records request but was unable to obtain them through that vehicle. TDCJ is the only agency in possession of the confidential, non-publicly available records, and Applicant has no other avenue for obtaining the records except through a court order. In short, because this is a capital case and involves possible allegations of misconduct by a governmental agency in possession of confidential records, the Court errs to treat this as a mere "general discovery request."

of special constitutional and statutory jurisdiction." *Id.* (citations omitted). While habeas proceedings in Texas are "categorized as criminal proceedings by statute" and the Rules of Civil Procedure do not ordinarily apply, *see id.*, it is nevertheless apparent that the nature of the proceedings and the interests at stake in a post-conviction habeas proceeding are distinct from those inherent in a criminal prosecution. Thus, even if one accepts that the law is well-settled in prohibiting "*ex parte* criminal discovery" in the context of a criminal trial, where the defendant bears no evidentiary burden, the law is far less clear in prohibiting *ex parte* proceedings in the distinct context of a post-conviction habeas proceeding, where the applicant bears the burden of raising and proving up his claims.

Moreover, in the particular context of a capital habeas proceeding, such a proceeding is governed by the specific provisions in Article 11.071 of the Code of Criminal Procedure. *Ex parte Graves*, 70 S.W.3d 103, 114 (Tex. Crim. App. 2002) (stating that Article 11.071 "establishes procedures for writs of habeas corpus in all Texas death penalty cases"). Thus, the core question in this case is whether Article 11.071 itself would implicitly authorize the trial court's actions here. Even assuming *arguendo* that *In re City of Lubbock* was correct in resolving the mandamus issue there (i.e., whether the trial judge could issue an *ex parte* order granting *pretrial* nonparty discovery in a criminal prosecution), that holding cannot resolve the distinct question here of whether a trial judge has authority *under Article 11.071* to issue a pre-application, nonparty discovery order facilitating the applicant's investigation of potential claims. In short, the Court errs to hold

that this case is analogous to *In re City of Lubbock* because that case did not purport to address the question of a trial judge's inherent authority under Article 11.071. By conflating the distinct issues raised in these cases, the Court wrongly avoids addressing the novel statutory question raised here.

**III.     Relator has failed to establish a clear right to relief based on an absence of any well-settled, clearly controlling authority.**

Reaching the issue that the Court declines to address here of a trial judge's inherent authority under Article 11.071, I would hold that Relator has failed to establish a clear right to relief under our demanding mandamus standard. *See Bowen*, 343 S.W.3d at 810; *see also Simon v. Levario*, 306 S.W.3d 318, 321 (Tex. Crim. App. 2009) (stating that clear right to relief means that the law is "definite, unambiguous, and unquestionably applies to the indisputable facts of the case"). Although Article 11.071 does not contain any language expressly authorizing a habeas judge to order nonparty discovery, our precedent indicates that a judge may nevertheless have implicit authority to take actions not expressly authorized if such actions are in furtherance of the statute's jurisdictional purpose. Because Relator cites no authority that clearly refutes the existence of such implicit authority here, and because other considerations support the existence of such implicit authority in this context, mandamus relief should be denied.

**A.     Implicit Authority Under Article 11.071**

The general purpose of the writ of habeas corpus is "to obtain a speedy and effective adjudication of a person's right to liberation from illegal restraint." *Ex parte Kerr*, 64

S.W.3d 414, 419 (Tex. Crim. App. 2002). Article 11.071 was enacted to effectuate this broad purpose and governs the exclusive means of challenging a death sentence in Texas. The statute expressly provides for the appointment of competent counsel, *see* ART. 11.071, § 2, and it imposes a duty upon counsel to investigate possible claims for the application. *Id.* § 3(a) ("On appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus."). Section 3 also permits counsel to submit requests for prepayment or reimbursement of expenses, including expert fees. *Id.* § 3(b), (c) (providing that counsel "may file with the convicting court an ex parte, verified, and confidential request" for the prepayment of such expenses; counsel must state "specific facts that suggest that a claim of possible merit may exist"), (d) (governing requests for reimbursements and similarly providing that such requests may be presented *ex parte*). Interpreting the statutory provisions in *Kerr*, we reasoned that they were a reflection of legislative intent to ensure "that a death row inmate *does* have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute." *Kerr*, 64 S.W.3d at 419 (emphasis in original).

While the provisions in Article 11.071 do not *expressly* authorize a trial judge's entry of a court order to facilitate counsel's investigation of potential claims, our precedent nevertheless recognizes that a judge may have *implicit* authority to take actions not expressly authorized if they are in furtherance of the statute's jurisdictional purpose. *See*

*State v. Holloway*, 360 S.W.3d 480, 487–88 (Tex. Crim. App. 2012) (addressing concept of implicit authority in context of post-conviction DNA proceedings under Code of Criminal Procedure Chapter 64). In *State v. Johnson*, this Court explained:

> [I]n addition to express grants of judicial power, a court has inherent judicial power, which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity. Courts may also have implied authority to act, arising from specific grants of power.

821 S.W.2d 609, 612 (Tex. Crim. App. 1991) (citing *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979)); *see also* TEX. GOV'T CODE § 21.001(a) ("A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.").[10] The limiting principle for implicit authority is that the court's actions must be in furtherance of the statute's "jurisdictional purpose." *Holloway,* 360 S.W.3d at 488 (explaining that "any acts undertaken under the guise of 'implicit authority' may be taken

---

[10] In its seminal decision in *Eichelberger*, the Texas Supreme Court explained the difference between implied and inherent powers:

> The Inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity. . . . [In contrast,] [t]he Implied powers of a court do not stand on such an independent basis as those described as inherent. Though not directly or expressly granted by constitutional or legislative enactment, implied powers are *those which can and ought to be implied from an express grant of power.*

*Eichelberger*, 582 S.W.2d at 398–99 (emphasis added).

only in furtherance of some other action for which there is an explicit grant of jurisdiction").

Here, the statute's apparent jurisdictional purpose—to provide capital habeas applicants with procedural mechanisms to ensure a single full and fair opportunity to litigate their post-conviction claims—is furthered by the habeas judge's ability to order pre-filing, nonparty discovery. Section 3 of the statute mandates that appointed counsel "shall investigate expeditiously" both the "factual and legal grounds" for relief *before* filing the application. Based on counsel's thorough investigation of potential claims, we have held that counsel is required to plead "specific facts" in support of relief in the application, rather than mere "conclusory allegations." *See Ex parte Medina,* 361 S.W.3d 633, 637–38 (Tex. Crim. App. 2011) (per curiam).[11] But, if counsel is unable to avail himself of the

---

[11] Expanding on this concept in *Medina*, we stated:

> A Texas writ application must be complete on its face. It must allege specific facts so that anyone reading the writ application would understand precisely the factual basis for the legal claim. . . . The application may, and frequently does, also contain affidavits, associated exhibits, and a memorandum of law to establish specific facts that might entitle the applicant to relief. . . . Furthermore, Article 11.071 . . . requires that, after the applicant files the application and the State files an answer, the convicting court (within 20 days) "shall determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist and shall issue a written order of the determination." If the applicant has not alleged facts, this determination could not be made. And the parties and the court would be unable to prepare for the hearing that is required when there are "controverted, previously unresolved factual issues material to the legality of the applicant's confinement."

*Medina*, 361 S.W.3d at 637–38.

court's assistance in obtaining confidential, non-publicly available information, as is the case with the materials sought here, then how can counsel possibly "investigate expeditiously" all the potential grounds for relief? To hold that a trial judge lacks implicit authority to facilitate counsel's investigation of claims at the pre-filing stage sets up a Catch-22 for capital habeas applicants—they are required to plead specific facts in the application (and cannot amend the application after the statutory filing deadline to supplement with additional claims); but they have no power to compel any third parties to actually comply with their factual investigation that might support those claims.[12] Given the broad purposes of Article 11.071 and the overall structure of the statute, I cannot agree that a habeas judge's pre-application, nonparty discovery order clearly and indisputably exceeds the permissible scope of implicit authority under the statute.

### B.    Additional considerations – *Ake* and general discovery principles.

More broadly speaking, the underlying principles of fundamental fairness conflict with the Court's approach in this case. In *Ake v. Oklahoma*, the Supreme Court held that in order to ensure indigent defendants have meaningful access to justice, due process entitles

---

[12] *See* ART. 11.071, § 3(a). I also note that the Texas Guidelines for Representation of Capital Defendants, Section 12.2(B)(4), "Guilt-Innocence Phase Investigation," states that "counsel must independently investigate the circumstances of the crime and all evidence inculpating the client. Counsel should not assume the accuracy of the evidence admitted at trial. . . . Habeas corpus counsel must attempt to obtain evidence and information in the possession of the prosecution or law enforcement authorities . . . [and] should pursue such evidence and information through public information act requests to the appropriate government agencies, or *through informal and formal discovery*." (emphasis added).

these defendants to court-appointed psychiatrists to assist in their defense. 470 U.S. 68, 83 (1985). The Supreme Court further noted that "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Id.* at 77. In *In re City of Lubbock*, this Court limited *Ake* to its facts and held that it has no application outside the context of requests for court-appointed experts. *See* 666 S.W.3d at 560–64. While I recognize that *Ake* does not directly apply to these circumstances, the underlying rationale of that case does apply here and means that capital habeas litigants should not be deprived of the ability to fully investigate their claims through use of court-ordered nonparty discovery. Here, as in *Ake*, a capital habeas applicant has no other means of obtaining the necessary discovery without a court order. And, as I have already noted above, there is no justifiable reason for the State to be privy to the Applicant's strategic decisions at the pre-filing stage with respect to what factual investigations he will conduct.[13] Principles of fundamental fairness require that such an individual be afforded a fair opportunity to present his claims. *See Ake*, 470 U.S. at 76 ("[F]undamental fairness, derives from the

---

[13] To this end, I again cite to the Guidelines for Representation of Capital Defendants, which provides, "Habeas corpus counsel must demand on behalf of the capital client all resources necessary to provide high quality legal representation, to conduct a thorough investigation of both the conviction and sentence, to procure documentary evidence, and to retain experts. *Because counsel should not have to disclose privileged communications or strategy to the prosecution in order to secure these resources, counsel must insist upon making such requests ex parte and in camera.*" Texas Guidelines for Representation of Capital Defendants, Section 12.2(B)(6)(a) (emphasis added).

belief that justice cannot be equal where . . . a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake").

Criminal prosecutions put defendants' liberty and lives at stake, and our discovery jurisprudence should reflect the severity of the interests involved. It is worth emphasizing that in civil cases—where merely money and property are at issue—nonparty discovery is widely available and permissible. *See* TEX. R. CIV. P. 205.1 (permitting nonparty discovery). In general, civil discovery is far more permissive than in criminal cases. *See, e.g.*, TEX. R. CIV. P. 192.3(a) ("a party may obtain discovery regarding *any matter that is not privileged* and is relevant to the subject matter of the pending action"). The federal courts also permit discovery in federal habeas corpus cases upon a simple showing of good cause. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citing Rule 6(a) Governing § 2254 Cases, which permits use of Federal Rules of Civil Procedure in habeas proceedings to conduct discovery upon showing of good cause).[14] And yet, the Court in this case chooses

---

[14] Current Rule 6, which addresses a federal habeas litigant's right to pursue discovery, states,

> Rule 6. Discovery
>
> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Rules Governing § 2254 Cases in the United States District Courts, available at:

to stonewall the Real Party in Interest from obtaining potentially exculpatory information, thereby preventing him from having a full and fair opportunity to raise claims that may entitle to him to relief. Given the foregoing considerations and the broad purposes underlying capital habeas proceedings, I oppose the Court's decision to grant mandamus relief under these circumstances.

## IV.    Conclusion

Ultimately, I am unpersuaded by the majority's cursory conclusion that the habeas court *clearly* lacked authority to enter the nonparty discovery order at issue here. It is enough at this juncture to simply hold that the law on this question is unsettled, which it undoubtedly is, and deny Relator relief on that basis. Going a step further, a judge's implicit authority under Article 11.071 permits him to enter an order for nonparty discovery prior to the filing of the application, in furtherance of both the statute's jurisdictional purpose and notions of fundamental fairness. Because the Court holds otherwise, I dissent.

Filed: June 14, 2023

Publish

---

https://www.uscourts.gov/sites/default/files/rules_governing_section_2254_and_2255_cases_in_the_u.s._district_courts_-_dec_1_2019.pdf