## In re Jane DOE 3.

### No. 00–0193.

Supreme Court of Texas.

March 13, 2000.

PER CURIAM.

Jane Doe, a minor, applied to a trial court for an order authorizing her to consent to an abortion without notifying either of her parents pursuant to section 33.003 of the Family Code. The trial court denied her application, and the court of appeals affirmed that judgment. CHIEF JUSTICE PHILLIPS, JUSTICE HECHT, JUSTICE OWEN, JUSTICE ABBOT and JUSTICE GONZALES would hold that Doe did not establish as a matter of law that she was sufficiently mature and well informed to make the decision to have an abortion without notification of either of her parents, and that she did not establish as a matter of law that notification may lead to her physical, sexual, or emotional abuse. Because the hearing in the trial court occurred on the second business day

after this Court issued its decision in *In re Jane Doe*, 19 S.W.3d 249 (Tex.2000) (*Doe 1*), Chief Justice Phillips and Justice Gonzales would vacate the court of appeals' judgment and remand this matter to the trial court in the interest of justice. Justice Enoch, Justice Baker, Justice Hankinson, and Justice O'Neill would conclude that Doe proved emotional abuse as a matter of law. Although they would render judgment for Doe, Justice Enoch, Justice Baker, Justice Hankinson, and Justice O'Neill join Chief Justice Phillips and Justice Gonzales in setting aside the court of appeals' judgment.

Accordingly, the judgments of the court of appeals and the trial court are set aside and this matter is remanded to the trial court for further proceedings. *See Twyman v. Twyman*, 855 S.W.2d 619, 622 n. 4, 626 (Tex.1993) (reversing the court of appeals' judgment and granting the lesser relief when a majority of the Court did not agree on either remand or rendition). The proceedings in the trial court must be concluded as if Doe's application had been filed the next business day after this opinion issues. In the event that Doe requires additional time after the issuance of this opinion to prepare for a hearing, she may request an extension of time. *See* Tex. Fam.Code § 33.003(h).

Justice GONZALES delivered an opinion concurring in the judgment, in which Chief Justice PHILLIPS joined, and in which Justice OWEN joined in Parts I and II.

## I

Doe is pregnant, unmarried, and under the age of eighteen. Texas law provides that a physician may not perform an abortion on an unemancipated minor unless the physician gives forty-eight hours notice to one of her parents or her guardian, with certain exceptions. *See* Tex. Fam.Code § 33.002(a). Among those exceptions is the right of the minor to apply to a court for an order authorizing her to consent to an abortion.

There are three possible bases on which a trial court could grant such an application. *See* Tex. Fam.Code § 33.003(i). The trial court is directed by the Family Code to determine by a preponderance of the evidence:

▮ whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian, [2] whether notification would not be in the best interest of the minor, or [3] whether notification may lead to physical, sexual, or emotional abuse of the minor.

*Id.*

Doe's application to the trial court asserted that all three grounds were present, except that she did not assert that notification may lead to her sexual abuse. In accordance with section 33.003(e) of the Family Code, the trial court appointed an attorney to represent Doe and also appointed a guardian ad litem. A hearing was held at which Doe testified in response to questions from her attorney, her ad litem, and the court. Her attorney and guardian ad litem also presented arguments to the court. At the conclusion of the hearing, the trial court failed to find that any of the three bases in section 33.003(i) for authorizing a minor to consent to an abortion without notifying a parent had been proven by a preponderance of the evidence. The trial court rendered judgment denying Doe's application, and the court of appeals affirmed that judgment without issuing an opinion. One justice in the court of appeals noted a dissent.

Doe has appealed to this Court pursuant to section 33.004(f). *See* Tex. Fam.Code § 33.004(f). She contends that she conclusively established that she is mature and sufficiently well informed to make the decision to have an abortion without notifying one of her parents and that notification may lead to her physical or emotional

abuse. For the reasons considered below, I disagree.

## II

Before undertaking a review of the record, a court must establish the appropriate standard of review. In *Doe 1*, this Court held that a determination under section 33.003(i) of whether a minor is "mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents" is reviewed for legal and factual sufficiency. *In re Jane Doe*, 19 S.W.3d 249, 251 (Tex.2000)(*Doe 1*); Tex. Fam.Code § 33.003(i). A trial court's determination of whether notification may lead to physical or emotional abuse of the minor primarily involves fact finding and is therefore similar to a determination of "mature and sufficiently well informed." *See Doe 1*, 19 S.W.3d at 251. Accordingly, a determination of whether notification may lead to physical, sexual, or emotional abuse of the minor is reviewed for legal and factual sufficiency. *In re Jane Doe 2*, 19 S.W.3d 278 (Tex.2000)(*Doe 2* ).

Because Doe bore the burden of proof, a reviewing court's inquiry is not simply whether there was legally sufficient evidence to support the trial court's judgment. In order for a court to reverse and render judgment in Doe's favor, it must examine the record to determine if there is any evidence that supports the trial court's failure to find for Doe. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the trial court's failure to make an affirmative finding, then the reviewing court must still determine whether, based on the entire record, "the contrary proposition is established as a matter of. law." *Id.* Thus, when a party with the burden of proof seeks to establish a right to recover as a matter of law, the evidence must be such that reasonable minds can draw only one conclusion. *See Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). There must be no evidence of probative force to raise a material fact question. *See id.*

Accordingly, in this case, the Court cannot reverse the court of appeals' judgment unless there was no evidence to support the trial court's failure to find (1) that Doe was mature and sufficiently well informed, or (2) that notification of one of Doe's parents may lead to her physical or emotional abuse. The evidence also must be undisputed and conclusive that Doe was mature and sufficiently well informed or that notification may lead to her abuse.

## III

I first consider Doe's contention that she was mature and sufficiently well informed to make the decision to have an abortion without notifying her parents. In *Doe 1* we noted that the two concepts of "mature" and "informed" overlap to some extent but are also distinct. *See Doe 1*, 19 S.W.3d at 256. During the hearing, Doe testified briefly about her age, educational background, scholastic accomplishments, extracurricular activities, and plans for the future.[1] These are the types of things that we said in *Doe 1* weigh on the decision of whether a minor is mature. *Id.* at 256.

With regard to being "sufficiently well informed," this Court held in *Doe 1* that at a minimum, the minor must make three showings. *Id.* at 256. First, that she has obtained information from a health-care provider about the health risks associated with the abortion and that she understands those risks. *Id.* at 256. Second, she must show that she understands the alternatives to abortion and their implications. This includes an understanding that the law requires the father to assist in the financial support of his child. *See id.* at 256. Third, she must show that she is aware of the emotional and psychological aspects of un-

1. Consistent with the parental notification statutes' confidentiality requirements, and with the practice recommended by the Court in *Doe 2*, 19 S.W.3d at 280, I paraphrase rather than quote Doe's testimony. *See* Tex. Fam.Code § 33.003(k).

dergoing an abortion and that she has considered how this decision might affect her family relations. *See id.* at 256–57. Here, Doe made an attempt to prove she was sufficiently mature and well informed as a ground for waiving notification, but she failed to make the required showings as a matter of law.

Doe testified that she understood the abortion process and is not ready to become a mother. She did not, however, establish that she has obtained information from a health-care provider about the health risks associated with an abortion and that she understood those risks. Nor was there evidence which established as a matter of law that she understood the risks associated with the particular stage of the her pregnancy.

Similarly, there was little evidence that Doe understood the alternatives to abortion and their implications or that she had thoughtfully considered her alternatives, including adoption and keeping the child. Doe testified that she had discussed certain things with her boyfriend, however, she did not indicate that she understood that the law requires a father to assist in the financial support of his child. Finally, Doe's testimony did not establish as a matter of law that Doe was aware of the emotional and psychological aspects of undergoing an abortion. From her testimony it appears that she talked with her boyfriend and with the court appointed guardian ad litem but, there is no testimony that she was aware of the emotional and psychological aspects of undergoing an abortion. While Doe adduced some evidence on the issue, she did not establish as a matter of law that she was mature and sufficiently well informed.

## IV

Doe's second contention in this Court is that she established as a matter of law that notification of one of her parents of an impending abortion may lead to her emotional abuse. Before deciding the specific facts of this case, we should attempt to derive some sense of what the Legislature meant by allowing parental bypass if notification may lead to the minor's emotional abuse.

The Legislature has not defined the term "emotional abuse" and this Court has not had the opportunity to interpret the term for purposes of the parental notification statute. As Justice Hecht notes, a definition for abuse appears in Chapter 261 the Family Code, containing some pertinent concepts:

> In this Chapter:
>
> > (1) 'abuse' includes the following acts or omissions by a person:
> >
> > > (A) mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning.

Tex. Fam.Code § 261.001(1)(A). I disagree that section 261.001 was meant to define abuse in all senses the term is used in section 33.003(i). First of all, the statute itself clearly provides that it defines abuse for Chapter 261 purposes, not broadly for the entire Family Code. Chapter 261 is entitled "Investigation of Report of Child Abuse or Neglect," and establishes a duty on professionals and others to report suspected child abuse. *See* Tex. Fam.Code § 261.101. Secondly, subsection (1) only states that abuse "includes" certain acts and omissions, indicating that even within Chapter 261 the definitions of the word abuse used in that statute are not necessarily exclusive.

Section 261.001's definition of "abuse" is mentioned in Chapter 33 of the Family Code, but only to say that a physician who has reason to believe the minor is subject to sexual or physical abuse must report it. *See* Tex. Fam.Code § 33.008(a). Chapter 33 of the Family Code has its own section of defined terms. If the Legislature intended the definition of abuse in Chapter 261 to apply generally to Chapter 33, it could have easily said so in the definitions set out at section 33.001.

While I do not believe that the Legislature intended Chapter 261 as the exclusive definition of abuse under section 33.003(i), I take from that definition and similar statutes that emotional abuse contemplates unreasonable conduct causing serious emotional injury. *See, e.g.,* TEX. HUM. RES.CODE § 48.002(2) (defining "abuse" for the chapter of the Human Resources Code concerning elderly protective services). Also, the Legislature's placement of emotional abuse alongside physical abuse and sexual abuse in section 33.003(i) contemplates unreasonable conduct by a third party that causes serious emotional injury. Some degree of familial discord is to be expected whenever an unwed minor notifies her parents or guardian that she is pregnant. The hard question is deciding when the reaction crosses the line from parental interaction, guidance, and discipline into conduct that may lead to serious emotional injury.

Moreover, whether conduct may cause serious emotional injury depends to some measure on the individuals involved. Conduct that would be extreme and hurtful in one family would not in another. The difficulty in ascertaining the severity of the emotional injury is analogous to our attempts to formulate a standard for mental anguish as an element of damages in a civil lawsuit. In *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995), we noted the difficulty of distinguishing between disappointment and severe disappointment, between embarrassment and wounded pride, between anger and indignation. *Id.* at 444 (holding that compensable mental anguish requires proof of "more than mere worry, anxiety, vexation, embarrassment, or anger"). Likewise with this ground, courts must, for example, distinguish between embarrassment and cruel humiliation. They must distinguish the minor who merely wants to avoid parental disappointment and disapproval from the minor who is at risk of serious emotional injury.

Proof of this ground would not necessarily require testimony from a professional confirming emotional abuse, and could be based solely on the testimony of the minor. But there must be evidence in the record of some character that notification may lead to serious emotional injury. Mere evidence that the minor would be upset or have short term feelings of guilt or anxiety would not establish emotional abuse. At the other extreme, evidence of prior physical or emotional abuse in the home which caused the minor to become severely depressed or self-destructive, if causally linked to notification, would almost certainly establish this ground.

## V

I now turn to the facts of this case. In Doe's application for waiver of parental notification form, she placed a checkmark on the ground that "Telling my parent(s), managing conservator or guardian that I want an abortion may lead to physical or emotional abuse of me." At the hearing, Doe did not claim physical abuse and testified that neither parent had physically abused her.[2] But she testified that her father is an alcoholic who, rather than confront the children with his disapproval, would take it out on the mother. Doe answered affirmatively when asked if the father has been physical with the mother. Doe's attorney ad litem did not attempt to get her to elaborate on what she meant by her characterization of her parent's conduct or relate a specific incident, even in the broadest terms. Doe's guardian ad litem asked her if she believed she would be subject to emotional abuse if she had to tell her parents, and she answered affirmatively. The guardian did not explain what emotional abuse meant in the context of her question or ask the minor to elaborate on her answer.

In discussions with the trial court, Doe's attorney ad litem made clearer statements about the severity of the father's possible conduct and its potential emotional effect

---

**2.** Again, I note that Doe's testimony is para-

phrased. *See supra,* 19 S.W.3d at 302 n. 1.

on Doe, but it is not clear that the attorney was making representations of fact or arguing for an interpretation of the facts. In any event, the attorney was not sworn as a witness and her statements are not evidence. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997) (holding that unsworn statements of attorneys are not normally evidence); *United States Gov't. v. Marks,* 949 S.W.2d 320, 326 (Tex.1997) (holding that argument of attorney is not evidence but may have significance in certain circumstances).

The scant direct evidence from Doe, combined with reasonable inferences, might be sufficient to support a finding on this issue in favor of Doe, if that were our task. But the trial court failed to find the facts in Doe's favor on issues she had the burden to prove. Before we can overturn a fact finding against Doe and render judgment, we must be able to hold that she conclusively established that notification may lead to emotional abuse. Here the evidence fails to establish vital facts, as a matter of law, because the evidence does not conclusively show what Doe meant when she said she would suffer emotional abuse. As we instructed in *Doe 2,* merely parroting terms from the statute or language from the forms promulgated by this Court is not sufficient for judicial bypass without testimony regarding the minor's specific circumstances. *Doe 2,* 19 S.W.3d at 283.

Doe failed to adduce any evidence of her emotional response to her father's conduct aside from her description of that response as emotional abuse. While that statement supports the conclusion that Doe will suffer some adverse emotional response, her statement does not explain what she means by emotional abuse. Without that explanation, the trial judge could reasonably conclude that her emotional response, which she calls emotional abuse, could be less than serious emotional injury. Without other evidence, I cannot say Doe established as a matter of law that her response would be emotional abuse.

Establishing this ground as a matter of law requires only reasonable certainty, not the degree of specificity or explicitness Justice Enoch attributes to my opinion. While it might be tempting to lower the standards for disregarding fact findings due to the sensitive nature of the subject matter, there is no justifiable basis for doing so in these proceedings. Chapter 33 proceedings are non-adversarial and confidential, and an attorney is appointed to help the minor present her evidence to satisfy the standards we announced in *Doe 1,* 19 S.W.2d at 256 (setting out the showings necessary to conclusively establish that the minor is sufficiently mature and well informed), *Doe 2,* 19 S.W.3d at 257 (holding that meaningful appellate review requires the trial court to make specific findings about the potential for abuse), and today.

## VI

The hearing on Doe's application was held the Tuesday following the Friday on which this Court issued its decision in *Doe 1.* That decision dealt with factors to be considered in determining whether a minor is "mature and sufficiently well informed to make the decision to have an abortion" within the meaning of section 33.003(i). I would vacate the judgment of the court of appeals and remand this case to the trial court for further proceedings in light of that opinion and the opinions today. *See* Tex.R.App. P. 60.2(f) (providing that this Court may "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law"); *Doe 2,* 19 S.W.3d at 283.

Justice Hecht's dissent takes issue with remanding this matter and the Court's decision to remand in *Doe 1* and *Doe 2.* Justice Hecht's dissent says that in so doing, "the Court has demonstrated its intention to substitute its judgment for the trial court's in every parental notification case that is appealed to us." 19 S.W.3d at 314. That is, of course, not the case. In remanding this and the two other parental

notification cases that have come before this Court, the Court has given the trial court and the parties an opportunity to consider opinions of this Court on issues of first impression. It will be the trial courts, not this Court, that will consider the evidence on remand and reach a judgment. More importantly, there is no principled basis in matters of this nature for allowing every minor who comes before a court in a section 33.003 proceeding the opportunity to present their cases with the benefit of the construction of section 33.003 by the highest court in this state except the minors in *Doe 1, Doe 2,* and *Doe 3.* As noted in *Doe 2,* the parental notification and judicial bypass provisions of the Family Code are unique and novel. There is no other procedure in our jurisprudence from which the attorneys and their clients could draw fair notice of the proceeding's requirements. Within a short time this rule will not excuse the failure to comply with the standards announced in *Doe 1* and *Doe 2.* Therefore, a remand to the trial court under Rule 60.2(f) is appropriate.

Justice Owen contends that Doe should not receive the benefit of a remand, concluding that Doe did not attempt to demonstrate that she was sufficiently mature and well informed to make the decision to obtain an abortion. While her proof relating to the three showings required in *Doe 1* is abbreviated, it is clear from the record that she presented her application without the benefit of that opinion's instruction. Accordingly, I concur with the Court's judgment to set aside the court of appeals' judgment and remand this matter to the trial court for further proceedings.

Justice ENOCH filed a concurring and dissenting opinion, in which Justice BAKER, Justice HANKINSON, and Justice O'NEILL joined.

Justice HECHT filed a dissenting opinion.

1. *See* Tex. Fam. Code § 33.002.

2. *See* Tex. Fam. Code § 33.003(i).

Justice OWEN filed a dissenting opinion.

Justice ABBOTT filed a dissenting opinion.

Justice ENOCH, joined by Justice BAKER, Justice HANKINSON, and Justice O'NEILL, concurring and dissenting.

We all apparently agree that the Legislature unambiguously expressed an intent to encourage parental involvement in their child's decision to terminate her pregnancy.[1] It also expressed an intent to protect children from the lasting and devastating consequences of physical, sexual, and emotional abuse. Where I disagree with my Colleagues is in my view that when the Legislature made the potential for abuse an exception to parental notification, it balanced these respective policy considerations.[2] That balance is reflected in the Legislature's decision that when notice to the parents *"may* lead to the minor's ... emotional abuse," the notice *"shall"* be waived.[3]

This case involves family violence—specifically, spousal abuse. If this were a case where the credibility of the minor were in issue, I could perhaps understand the reluctance of the Court to conclude that the abuse exception had been met as a matter of law in this case. I could perhaps also understand the position of my Colleagues who would affirm the trial court's denial outright. But the credibility of the minor isn't in issue—the trial court *believed* the minor. The trial court simply determined that, on balance, the abuse would be *worse* if the minor didn't tell her parents. Because under no stretch can I read the law as allowing the trial court to consider the relative severity of the abuses, I would reverse the lower courts' judgments and grant the minor's application. Therefore, I dissent. Under the circum-

3. Tex. Fam. Code § 33.003(i)(emphasis added).

stances of this case, with six Justices voting to set aside the judgments, but only four Justices voting to render judgment, *Twyman v. Twyman*[4] dictates that the matter be remanded and compels my concurrence in the judgment.

I fully embrace that "[a] minor's interests in these circumstances are not only immediate; they are profound and long-term."[5] I know that "a minor's concealment from her parents of so profound a decision, like the decision itself, may have lifelong, and unforeseen, consequences."[6] And I, too, believe that parents have "fundamental, constitutional rights to raise their children"[7] and "to provide children guidance in making difficult decisions."[8] Like the Legislature, I also recognize the severe and devastating consequences of physical, sexual, or emotional abuse. Unlike other Members of this Court, I think it is inappropriate for this Court to usurp the Legislative function by reconsidering the relative weight given by the Legislature to these policy considerations and then placing the Court's thumb on the scale.

Furthermore, under the current statutory scheme, it is highly unrealistic and inappropriate for the courts to differentiate among the perceived degrees or types of abuse that may occur or to consider whether the abuse would occur anyway so that one more instance doesn't matter. Abuse is abuse; it is neither to be trifled with nor its severity to be second guessed. Doe unequivocally testified that her father is an alcoholic, that in the past he has gotten intoxicated, overreacted, and taken anger over the children out on her mother and "become physical" with her mother. But JUSTICE HECHT, JUSTICE OWEN, and JUSTICE GONZALES begin by questioning what the minor meant by "physical."[9] JUSTICE GONZALES would also require proof of "serious emotional injury"[10] on top of the evidence already in this case, apparently because "[c]onduct that would be extreme and hurtful in one family would not in another."[11] JUSTICE HECHT and JUSTICE OWEN would go further and require Doe to demonstrate that the abuse equated to physical and sexual abuse and resulted in "material impairment in the child's growth, development, or psychological functioning."[12] And all three would require her to describe specific instances of abuse. Additionally, JUSTICE HECHT demands that Doe detail "when [the abuse] could occur, or over what issues, or how severe it was, or how it affected her mother."[13] (Members of this Court will no doubt reveal these details irrespective of admonitions that the record should remain confidential.[14]) This sort of parsing among types or degrees of abuse is not indicated anywhere in the statute.

To reach their conclusion, JUSTICE HECHT, JUSTICE OWEN, and JUSTICE GONZALES all rely, more or less, on Chapter 261 of the Texas Family Code. Chapter 261 of the Family Code is entitled "Investigation of Report of Child Abuse or Neglect." It mandates that certain persons report suspected abuse or neglect to speci-

---

**4.** 855 S.W.2d 619 (Tex.1993).

**5.** *In re Jane Doe 2*, 19 S.W.3d 278 (Tex.2000) (HECHT, J., dissenting).

**6.** *In re Jane Doe 1*, 19 S.W.3d 249 (Tex.2000) (HECHT, J., dissenting).

**7.** *Id.* at 317–18 (HECHT, J., dissenting).

**8.** *Id.* at 276 (HECHT, J., dissenting).

**9.** 19 S.W.3d at 310.

**10.** 19 S.W.3d at 304.

**11.** 19 S.W.3d at 304.

**12.** 19 S.W.3d at 315.

**13.** 19 S.W.3d at 315.

**14.** *See* TEX. FAM.CODE § 33.003(k); TEXAS PARENTAL NOTIFICATION RULES AND FORMS, Rule 1.4(effective January 1, 2000); *but see In re Jane Doe*, 19 S.W.3d at 266 (Tex.2000)(HECHT, J., dissenting); *In re Jane Doe 2*, 19 S.W.3d at 285 (Tex.2000) (HECHT, J., dissenting); *In re Jane Doe 3*, 19 S.W.3d at 309 (Tex.2000) (HECHT, J., dissenting).

fied reporting agencies, including law enforcement agencies. Section 33.008 of the parental notification statute requires a physician to report suspected physical and sexual abuse to the appropriate authorities, and refers to a definition in section 261.001.[15] But section 33.008 doesn't rely on section 261.001 to define physical or sexual abuse, it refers to section 261.001 only to define a "person responsible for the minor's care, custody, or welfare."[16] There just isn't any indication in Chapter 33 that the "abuse" definitions in Chapter 261 control a trial court's inquiry under section 33.003(i).

Contrary to my Colleagues' assertions, the stronger argument is that the Legislature didn't intend for a minor to have to prove "mental or emotional injury . . . that results in an observable and material impairment in the child's growth, development, or psychological functioning"[17] to obtain a parental notification waiver. For had the Legislature intended that result, JUSTICE HECHT would not have had to read all the way to section 33.008 to find it. Instead, the relevant part of the parental notification statute, section 33.003(i), would read "If the court finds that . . . notification may lead to physical, sexual, or emotional abuse of the minor, *as defined by section 261.001* . . . ." But it doesn't.

Everyone seems to agree that evidence that parental notification will likely lead to physical abuse of another in the minor's household is at least some evidence that notification "may lead to . . . emotional abuse of the minor."[18] That is precisely what the minor testified to in this case, and that is precisely what the trial court believed. Doe testified that, in the past, her father has blamed her mother for problems he has had with his children and has physically abused her mother as a result. Doe also testified that she does not want to tell her mother about her decision to have an abortion because her mother would tell her father and her father would become angry and physically take it out on her mother. Although JUSTICE OWEN suggests that the trial court need not "assume" that Doe's mother would tell her father, Doe's testimony was unequivocal—her mother *will* tell her father. And the trial court must have believed her because the trial court concluded that Doe's mother would be abused whether her father found out about her circumstances now or later.

It further troubles me that Members of this Court permit the trial court to pile one presumption upon another. First, the trial court presumed that Doe's parents would inevitably find out if Doe has an abortion, and then it presumed that the abuse would be worse if the parents found out after the fact. The trial court itself first raised the issue of whether Doe's parents would find out by simply stating it as a fact, saying, "You know, you realize that even if I give you permission that eventually [your mother] will find out?" Then the trial court denied waiver of parental notification because on balance it presumed the abuse would not be so bad if it happened before Doe had an abortion.

Indeed, the apparent impossibility of a minor ever proving that notification may lead to emotional abuse is exemplified in the following passage contained in JUSTICE HECHT's opinion today: "The closest Doe came to stating that her father had physically abused her mother was in the following exchange:

[By Doe's attorney]: One of the reasons she's here is to avoid that, having to witness it's her fault that **her mother becomes physically abused by her father in a drunken rage** because of something that she got into.

---

15. TEX. FAM. CODE § 33.008.

16. TEX. FAM. CODE § 33.008; *see also* TEX. FAM. CODE § 261.001(5).

17. 19 S.W.3d 315–16, citing TEX. FAM. CODE § 261.001(1)(A).

18. TEX. FAM. CODE § 33.003(i).

THE COURT: Apparently, that happens, right? So other things trigger that off, right?

DOE: Yes."[19]

In light of the Legislature's pronouncement that if "notification *may* lead to ... emotional abuse of the minor"[20] the trial court "*shall* enter an order authorizing the minor to consent to the performance of the abortion without notification to either of her parents,"[21] how can this not be enough? Setting aside for the moment that the minor confirmed in her own words the truth of her attorney's statement, it is not enough to say that the attorney's words are not evidence.[22] Even JUSTICE HECHT has written that the attorney's words have "special significance."[23]

The Legislature has balanced the admittedly strong societal interest in having parents guide the decisions of their children with the equally strong societal interest in prohibiting child abuse. It is a usurpation of that action for this Court to interject itself in that process by reweighing these interests, essentially holding that regardless of the language used in the statute, abuse should be tolerated in the name of parental rights—just not too much. I respectfully dissent.

Justice HECHT, dissenting.

After decisions from this Court in four parental notification cases in two weeks, it should by now be obvious that a majority of the MEMBERS of this Court are ideologically opposed to any meaningful requirement that a minor tell her parents before she has an abortion. So they have taken the standards prescribed by the Parental Notification Act for bypassing notice to parents of a minor child's intent to have an abortion[1] and set those standards so low that the Act cannot achieve its purposes, which are to protect parents' rights to be involved in their children's lives and encourage that involvement, and to discourage teenage pregnancy and abortion. And they have accorded trial courts' factual determinations in denying minors' applications almost no respect, assuming for themselves the authority to decide whether a minor has met her burden of proof. To substitute judicial intent for legislative intent, and Supreme Court findings for trial court findings, is judicial activism.

The various opinions that have issued are laden with rhetoric denying these charges, but the Court's actions speak louder than words. Two weeks ago in *In re Doe 1(I)*,[2] the Court reversed the trial court's denial of the minor's application, even though the Court found no error in the trial court's ruling. The Court remanded the case "in the interest of justice" to allow the minor a second opportunity to prove her case.[3] When the trial court on remand again denied the minor's application and the court of appeals again af-

---

**19.** 19 S.W.3d at 312 (emphasis added).

**20.** TEX. FAM.CODE § 33.003(i)(emphasis added).

**21.** *Id.* (emphasis added).

**22.** 19 S.W.3d at 301 (GONZALES, J., concurring).

**23.** *United States Government v. Marks,* 949 S.W.2d 320, 326 (Tex.1997); *see also Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997).

**1.** "The court shall determine by a preponderance of the evidence whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian, whether notification would not be in the best interest of the minor, or whether notification may lead to physical, sexual, or emotional abuse of the minor. If the court finds that the minor is mature and sufficiently well informed, that notification would not be in the minor's best interest, or that notification may lead to physical, sexual, or emotional abuse of the minor, the court shall enter an order authorizing the minor to consent to the performance of the abortion without notification to either of her parents or a managing conservator or guardian and shall execute the required forms." TEX. FAM.CODE §§ 33.003(i).

**2.** 19 S.W.3d 249 (Tex.2000).

**3.** *Id.* at 257.

firmed, the Court last week summarily ordered that the application be granted in *In re Doe 1(II)*.[4] Earlier last week in *In re Doe 2*,[5] the Court concluded as it did in *Doe 1* that the trial court had not erred in denying the minor's application. This time the Court decided, contrary to *Doe 1*, that it did not have the power to reverse an errorless judgment after all, so instead it *vacated* the trial court's judgment and remanded the case "in the interest of justice" for a second hearing—a procedure the Court has never before used in any other case and by its own admission will probably never use again.[6] Today, in *In re Doe 3*, the Court again vacates the trial court's ruling and remands for a second hearing. It may simply be that no trial court or court of appeals in the State of Texas can manage to get one of these cases right enough to have it affirmed, or it may be that the Court in defiance of the Parental Notification Act intends to prod and prod the lower courts until they surrender their own judgment and grant minors' applications instead of denying them. We shall see. *In re Doe 4* is pending before us. The Court's decision in that case and the ones that will surely follow should prove illuminating.

Today's decision is especially notable in that four Justices—Justice Enoch, Justice Baker, Justice Hankinson, and Justice O'Neill—explain that they would hold that this minor was absolutely entitled to an abortion without telling her parents and that the trial court had no choice but to grant her application. Why? Because Doe testified that her father takes things out on her mother and might do it again if he knew that Doe was pregnant and wanted an abortion. That meager evidence, say the four Justices, conclusively proves that

the father physically abuses his wife and emotionally abuses Doe and will do so if he is told that Doe wants an abortion. These Justices wholly disregard the fact that the trial court had the opportunity to view Doe, to hear her voice and watch her manner, and to discuss her concerns with her, her attorney, and her guardian at some length. The trial court concluded, in what Doe's guardian acknowledged was a "tough case", that Doe had failed to prove by a preponderance of the evidence that she should have an abortion without notice to her parents. Justice Enoch and the three Justices who join him would hold that no reasonable person could come to the same conclusion.[7]

The Court's adamant determination to set aside every denied application for one reason or another encourages an appeal in every case and threatens to overwhelm the Court's resources. For over three weeks the entire Court has worked on nothing but parental notification cases. Four cases have been decided, one with opinions to follow; another is pending, and no end is in sight, unless, that is, the trial courts and courts of appeals give up, which they cannot do and still exercise their own judgment. We must even use sequential Arabic numerals to distinguish the many *Doe* s, and Roman numerals to show whether they are here for the first or second time—*Doe 1(I)*, *Doe 1(II)*, *Doe 2*, *Doe 3*, etc., etc.. An ideological majority has sown the wind and reaped the whirlwind.

In this case, as in *Doe 1(I)*, *Doe 1(II)*, and *Doe 2*, there was evidence to support the trial court's denial of the application in this case, and I would affirm that ruling. Accordingly, I dissent.

---

**4.** 43 Tex. Sup.Ct. J. ——, 19 S.W.3d 300 (2000).

**5.** 19 S.W.3d 278 (Tex.2000).

**6.** *Id.* at 283 ("Although we have never used [Texas Rule of Appellate Procedure 60.2(f) ] to remand for a new hearing in the trial court, the rule's plain language does not preclude us

from doing so. This rule is particularly well-suited to situations such as this one, where courts must apply the requirements of *a unique or novel statutory scheme.*" (emphasis added)).

**7.** *See Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

## I

Jane Doe, 17, applied to the trial court for authorization to have an abortion without telling her parents, as permitted by section 33.003 of the Texas Family Code. She filed a standard form application [8] with check marks beside the following three assertions:

I am mature enough to decide to have an abortion without telling my parent(s)....I also know enough about abortion to make this decision.

Telling my parent(s) ... that I want an abortion is not in my best interest.

Telling my parent(s) ... that I want an abortion may lead to physical or emotional abuse of me.

Each of these assertions, if proved by a preponderance of the evidence, is a statutory basis for granting the application.[9]

The trial court appointed an attorney to represent Doe, appointed another attorney to act as her guardian ad litem, and conducted a hearing that they attended with Doe, all as required by law.[10] Doe was the only witness at the hearing, and her testimony was very brief, much of it consisting of simple "yes" answers to questions put to her by her attorney, her guardian, and the court. Doe's attorney and guardian did not testify but engaged in extensive colloquy with the court.

Doe testified that she is a high school junior "doing pretty good" in school, that she is engaged in typical extracurricular activities, and that she is planning to go to college. She is six weeks' pregnant. She had been taking birth control pills but "skipped". The father is also a junior in high school, whom Doe has been seeing for several months. She has discussed her situation with him, and they have agreed that she should get an abortion.

The focus of the hearing was not whether Doe was well informed of the risks of abortion, her alternatives, and the risk of emotional and psychological harm. Doe's testimony on all these matters consists entirely of her answers to the following two questions asked by her guardian:

Q We've talked and you have indicated to me that you understand the abortion process; is that right?

A Yes, ma'am.

Q What you are telling the court is that you are not ready to have a child and become a mother at this point; is that true?

A Yes, ma'am.

Doe's guardian then stated:

I have nothing further, Your Honor, only to tell you that I have talked to her and I believe she is informed. I believe that it is in her best interest to waive the parental notification at this time and that she be allowed to have the abortion.

Doe's attorney added:

We have discussed it also with her boy friend who is also in school and is unable to support a child.... They have talked it over at length.... [T]hey feel it's—the child would end up in a home that—is not going to be conducive to a good, healthy child in the future.

Even assuming that the attorney's and guardian's statements were evidence for the trial court to consider—and they may well not have been—these summary statements and Doe's "yes" answers to two questions are plainly insufficient to show that Doe was "mature or sufficiently well informed" to obtain an abortion without notifying her parents, and no MEMBER of this Court thinks otherwise.

But this issue, as I say, was not the focus of the hearing. Rather, the hearing dwelt on why Doe did not want to tell her parents that she wanted to have an abortion. Doe testified:

Q Now, why would you not want to tell your parents?

---

8. PARENTAL NOTIFICATION RULES, FORM 2A.

9. TEX. FAM.CODE § 33.003(i).

10. *Id.* § 33.003(e)-(g).

A   Because my—Well, really my dad. He's an alcoholic and a lot of times he doesn't react—He reacts, but he takes things out of proportion.   He takes it out on my mom instead of us.

Q   Has be ever become physical with your mom?

A   Yes.

\*   \*   \*

Q   You believe that if you are forced to tell your parents that you would be subjected to emotional abuse; is that correct?

A   Yes.

Doe's guardian summarized: "she is not sure what her father will do in this case. If he's sober he's fine, but if he's intoxicated she has no idea."

The trial court then engaged Doe in a discussion to try to understand her concerns about telling her parents.   Doe explained that she knew she could tell her mother, although it would hurt her mother to know.   Asked if her mother would be hurt more if she were not told, Doe answered, "Yeah, I guess."   Doe explained that if she told her mother, her mother would tell her father, and then her father might become intoxicated and take it out on her mother.   The closest Doe came to stating that her father had physically abused her mother was in the following exchange:

[By Doe's attorney]: One of the reasons she's here is to avoid that, having to witness it's her fault that her mother becomes physically abused by her father in a drunken rage because of something that she got into.

THE COURT: Apparently, that happens, right?   So other things trigger that off, right?

DOE: Yes.

Doe did not mention any specific instance or describe how severe her father's reaction might be.

Doe's attorney told the court that Doe would probably tell her mother at some point whether she was required to or not, and Doe did not contradict that statement. Doe then answered questions by the court as follows:

Q   I think—I mean, do you think it would be easier to tell your mother after you had the procedure?

A   I think so.

Q   Do you believe that your mother is going to share this information with your dad?

A   Yes, she will.   She won't keep that from him.

Q   Has your dad ever physically abused you?

A   Me, no.

Q   Okay.

A   It's more like problems at home and having to do with like me. . . .   He will take—just find a reason to take it out on my mom.

Q   Don't you think he's going to be even more upset when he finds out that this occurred without his knowledge?

A   I guess.   I don't know.

From the court's extended discussions with Doe's attorney and guardian it is apparent that all believed that Doe would tell her mother about her decision to have an abortion, either before or after the abortion was performed, that her mother would then tell her father, and that her father might react in anger toward her mother, although he might not.   As Doe's guardian told the court: "[Doe] is not sure what her father will do in this case.   If he's sober he's fine, but if he's intoxicated she has no idea."   The court expressed doubt whether the father's response would be abusive, and if so, whether it would be avoided or exacerbated by attempting to keep the matter from him.

At the conclusion of the hearing the trial court stated that it would deny Doe's application.   The court issued its findings and conclusions on standard Form 2D as permitted by Rule 2.5(a) of the Parental

Notification Rules. The court made no findings concerning whether Doe was mature or sufficiently well informed to have an abortion without telling her parents, or whether telling them would not be in her best interest or might lead to physical or emotional abuse. Doe appealed, and the court of appeals affirmed by a divided vote.

## II

No MEMBER of this Court thinks that Doe came close to proving by a preponderance of the evidence that she is "mature and sufficiently well informed", within the meaning of the statute, to have an abortion without telling her parents. Doe does not even argue her second assertion in her application, that it is not in her best interest to tell her parents, apart from her emotional abuse argument. Yet JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS would nevertheless remand the case to the trial court so that Doe can try again on both these issues. This, they say, is in the interest of justice and authorized by the Rules of Appellate Procedure and by precedent of this Court. I do not agree that a remand on these issues is either authorized or in the interest of justice.

### A

Two days ago in *Doe 2* the Court held [11] that it can vacate a court of appeals' judgment and order a new trial on the authority of Rule 60.2(f), which permits the Court to "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law." [12] The Court's peculiar reasoning was that although the rule had never been used to order a new trial, neither did it preclude that use, so therefore it was all right. In other words, the Court can do anything it is not prohibited from doing. I did not agree, for reasons that I expressed,[13] but I

accede to the Court's holding as I am bound to do.

Now that the Court has held that Rule 60.2(f) *can* be used to order a new trial in light of changes in the law, the question here is whether a new hearing *should be* ordered in this case as in *Doe 2*. The only arguable change in the law since the trial court heard this case was in *Doe 1*, where the Court says it clarified what section 33.003(i) of the Family Code means by "mature and sufficiently well informed". (Doe does not make a "best interest" argument here.) Again, for reasons I explained in *Doe 2*,[14] I do not agree that *Doe 1* was a change in the law, and I certainly do not agree that it was a change warranting a new hearing in *Doe 1* or *Doe 2*. But even given the decision in *Doe 2*, the present case is different. The minors in *Doe 1* and *Doe 2* both tried to show that they were mature and sufficiently well informed to have an abortion without notifying their parents, but their proof fell short of the Court's standards. One can make the argument—though I do not agree with it— that they may have been surprised to learn in *Doe 1* that more evidence should have been offered. The minor in the present case, on the other hand, made no real attempt to prove that she was mature and sufficiently well informed as the minors in *Doe 1* and *Doe 2* did. Her evidence consisted entirely of "yes" answers to two brief questions, one asking whether she "understand[s] the abortion process," and the other asking whether she was telling the court that she was "not ready to have a child and become a mother". No reasonable person could have thought that such testimony would constitute proof by a preponderance of the evidence within the meaning of section 33.003(i), and thus have been surprised to learn from *Doe 1* that more is necessary. Even if new hearings

11. *In re Doe 2*, 19 S.W.3d 278, 283 (Tex. 2000).

12. TEX.R.APP. P. 60.2(f).

13. *Doe 2*, 19 S.W.3d at 285 (Hecht, J., dissenting)

14. *Id.*

on the "mature and sufficiently well informed" issue were appropriate in *Doe 1* and *Doe 2*, a new hearing on that issue should not be ordered in this case.

We have repeatedly held that "an errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial."[15] Former Chief Justice Calvert, surveying the history of Texas law on this subject in a law review article published in 1972, explained bluntly: "Attorneys frequently interpret [the rules and cases] as authorizing the supreme court to *reverse* trial court judgments in the interest of justice. Not so."[16] He added that "to endow the court with unbridled discretion to set aside or change lower court judgments at will ... would surely not be acceptable to lawyers, and it is doubtful that it would even be welcomed by the court's justices."[17] In most circumstances Chief Justice Calvert's observation would ring true, but he did not anticipate the current JUSTICES' determination to see to it that minors' applications for abortions without parental notification not be denied. The Court's repeated remands in the interest of justice in parental notification cases cannot be justified because of a change in the law. It should hardly come as a surprise to a minor or her attorney that she must make some minimal showing before she can obtain an abortion without parental notification, and that is all the Court has required.

JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS say that "the parental notification and judicial bypass provisions of the Family Code are unique and novel." This is simply not so. Many other states have had parental notification and consent statutes for decades. The Texas statute was modeled on other states' laws long in effect. Indeed, *Doe 1* cites other states' law in construing the Texas statute.[18] If the Court did not think other states' laws provided guidance in construing the Texas statute, why did it cite other state court cases? Even if other states' laws were wholly ignored, to say, as JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS do that "[t]here is no other procedure in our jurisprudence from which the attorneys and their clients could draw fair notice of the proceeding's requirements" is plainly wrong. The "best interest of the child" standard is well known in Texas law and applied daily in hundreds of cases across the State. Courts are accustomed to assessing the maturity of children in numerous contexts, such as family law matters and juvenile prosecutions. Physical, sexual, and emotional abuse is routinely reported, investigated, and prosecuted. Whether a person is well informed on a subject is not a unique question. JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS act as if the Legislature created the concepts of maturity, best interest, and abuse for the first time in the Parental Notification Act. Nothing could be further from the truth. A remand cannot be justified because the Act so changes the law that lawyers and their clients were unfairly caught off-guard.

There is simply no procedural vehicle for the Court's remands in this case and its two predecessors, other than a judicial fiat.

**B**

Nor is a remand in the interest of justice. As I have said, the only significant pronouncement in *Doe 1* and *Doe 2* was that the Parental Notification Act means almost nothing. The state of the law is not much different than it was before the

---

15. *Uselton v. State*, 499 S.W.2d 92, 99 (Tex. 1973); *accord Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966) (citing cases).

16. Robert W. Calvert, *"... in the Interest of Justice"*, 4 ST. MARY'S L.J. 291, 300–301 (1972) (emphasis in original).

17. Calvert, *supra* note 14, at 291.

18. *In re Doe 1*, 19 S.W.3d at 254 n. 2.

Act was passed, only now a minor must take the trouble of going to court and reciting enough things to satisfy *Doe 1* and *Doe 2*. The injustices of the Court's remand procedure are several. It is unjust to bounce a minor from this Court to the trial court and back when this Court cannot agree on what she must show to prevail. The Court is deeply fractured on what Doe must prove. It is unjust to the trial court to force reconsideration of an issue without explaining the error in its first ruling. It is unjust to the Legislature to prod and prod trial courts to allow teenage abortions when that body passed a statute to accomplish the opposite purpose. It is unjust to parents to provide minors multiple opportunities to deprive their parents of their legitimate, fundamental right to involve themselves in their children's decisions, especially one as momentous as whether to have an abortion. And it is unjust to this Court to encourage minors to appeal every case here with the lure that this Court will automatically reconsider it on the merits. It is unjust for this Court to assume the role of surrogate parents to all minors who want abortions without telling their parents, but that is precisely what the Court has done with its unrelenting remands.

### III

The record supports the trial court's decision that Doe failed to prove by a preponderance of the evidence that she would be subject to emotional abuse if she told her parents that she is pregnant and wants an abortion. Doe testified that her father is an alcoholic, that he sometimes "reacts, . . . takes things out of proportion . . . [and] takes it out on" Doe's mother. Doe gave no examples. Asked if her father had "ever become physical with your mom", Doe answered yes. But again, Doe did not explain. Did he beat her? Doe did not say so. Did he grab her arm? Was that abusive? Doe never said. When

Doe's attorney, not Doe, argued that Doe should not have to witness "her mother [being] physically abused by her father in a drunken rage" and the court asked whether "that happens" or "other things trigger that off," Doe simply answered "yes". But Doe's guardian told the court that Doe was "not sure what her father will do in this case." Doe did not describe even a single instance of her father's conduct to show when it could occur, or over what issues, or how severe it was, or how it affected her mother, or how severely it affected her. She did say that her father had never physically abused her, and that his conduct was never aimed at her.

Chapter 33 of the Family Code does not define what threat of "emotional abuse" must be proved to permit a trial court to authorize a minor to have an abortion without telling her parents, but there are clues. Section 33.008 requires that a physician who believes that a minor may suffer physical or sexual abuse as defined in section 261.001 of the Family Code must report the suspected abuse to the Department of Protective and Regulatory Services.[19] This reference in section 33.008 strongly suggests that abuse within the meaning of section 33.003(i) is the same as abuse defined in section 261.001. That statute is part of chapter 261 of the Family Code, which requires that child abuse and neglect be reported and investigated. Section 261.001(1)(A) defines "abuse" as including "mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning".[20] Absent a clearer indication of legislative intent, I would use this definition, prescribed in a related context and referred to in chapter 33, in applying section 33.003(i).

The record contains no evidence whatsoever that Doe would suffer "an observable and material impairment in [her] growth, development, or psychological functioning"

---

**19.** TEX. FAM.CODE § 33.008.

**20.** *Id.* § 261.001(1)(A).

if she told her parents that she is pregnant and wants an abortion. Doe's testimony lacked specifics. Although the trial court seemed to believe Doe that her father might react adversely to news of Doe's pregnancy and desired abortion—which he certainly might be expected to do if he is not completely apathetic—it clearly doubted that Doe's father's reaction would rise to the level of emotional or physical abuse. Attempting to encourage Doe, the trial court offered: "Sometimes we, in our minds, think it's going to be a lot, lot worse than what it actually is going to be." The trial court was also skeptical that Doe could keep the news from her father for long, given her intent to tell her mother, and the court expressed concern that Doe's relationship with her parents would be more adversely affected if she did not tell them of her situation before she had an abortion.

The trial court was free to credit Doe's testimony as much as it did and still harbor doubts about other aspects of it. With those doubts, the court could well conclude that Doe had not proved by a preponderance of the evidence that telling her parents, or just her mother, would expose Doe to emotional abuse, and thus had not satisfied that requirement in section 33.003(i) for waiving parental notification. Given the brevity of Doe's testimony and the complete lack of specificity in her assertions, the trial court could rationally find that her concerns, while real, did not show a likelihood of abuse.

The trial court's denial of Doe's application is supported by evidence in the record and should be affirmed.

## IV

JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS attempt to define "emotional abuse" as used in section 33.003(i) of the Family Code. They begin by rejecting the definition of abuse in section 261.001 of the Family Code because it expressly does not apply outside chapter 261 (they're correct, of course), and because section 261.001 states that it is not all-inclusive (correct again), and because section 33.003(i) does not refer to section 261.001 (no question). That said, they then simply make up their own definition of abuse. Now, as between a definition a few pages over in the Family Code which does not expressly apply in these circumstances but is certainly usable, and a definition invented from scratch, it seems to me that the former is rather clearly preferable. The fact that section 261.001 is not prescribed for use in section 33.003(i) says nothing about whether it could or should be use. JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS do not say that section 261.001 cannot be used in the present context, only that they do not want to use it for reasons not stated.

JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS then say, I think rightly, that "emotional abuse contemplates unreasonable conduct causing serious emotional injury."[21] That is certainly true under section 261.001. Emotional abuse, they say, is not "[s]ome degree of familial discord", or embarrassment, or mere "parental disappointment and disapproval".[22] It is not established merely by "evidence that the minor would be upset or have feelings of short term feelings of guilt or anxiety".[23] All of this seems fairly sensible.

But what do JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS really mean by their words? This: that "[t]he scant direct evidence [in the present case], combined with reasonable inferences, might be sufficient to support a finding [of emotional abuse]".[24] What "reasonable inferences"? Do they mean "inferences" or "guesses"? I do not see how the likelihood of Doe's father reacting adversely, or the seriousness of such a reaction, or the probable

---

**21.** *Ante,* at 304.

**22.** *Ante,* at 304.

**23.** *Ante,* at 304.

**24.** *Ante,* at 305.

impact on Doe can be inferred from a record with no specific facts when Doe herself does not know what might happen. If JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS think that the evidence in the present record is enough to prove abuse by a preponderance of the evidence, then they do not mean much by "unreasonable conduct causing serious emotional injury" or "mere assertion". In essence, JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS say that if they had been the trial judge, they might well have found emotional abuse. Such a result would show that the words of their definition lack any real content.

Doe offered no evidence of a significant risk of unreasonable conduct causing serious emotional injury. In fact, she did not claim to have ever sustained serious emotional injury as a result of her father's conduct. If JUSTICE GONZALES and CHIEF JUSTICE PHILLIPS really mean what they say about emotional abuse, Doe's evidence could not meet their definition. For them to conclude otherwise casts doubt on their definition.

## V

JUSTICE ENOCH, JUSTICE BAKER, JUSTICE HANKINSON, and JUSTICE O'NEILL would hold that Doe proved as a matter of law that she would suffer emotional abuse if she told her parents that she wanted an abortion. Wrapping themselves in transparent spousal abuse rhetoric, these JUSTICES cannot conceive how any reasonable person could take a view contrary to theirs.

Well, the reasons are not elusive. First: there is no evidence in the record before us, even taking the statements of the attorney and guardian as testimony (which they may not be[25]), that Doe's telling her parents of her intention to obtain an abortion might "result[ ] in an observable and material impairment in the child's growth, development, or psychological functioning", the definition of abuse in section 261.001(1)(A) of the Family Code. Doe certainly did not prove such abuse as a matter of law. Second: even if one were to apply a lower threshold for finding abuse, Doe still did not establish its likelihood as a matter of law. Doe's guardian stated that *Doe was not sure what her father would do,* and Doe did not disagree. JUSTICE ENOCH and those who join him studiously avoid this statement in the record. Third: if Doe's testimony proved a threat of abuse as a matter of law, then almost any minor worried about a paternal outburst at the news of her pregnancy and desire to have an abortion is entitled to a judicial bypass under chapter 33 as a matter of law. "I just know," she might well say, "that if I tell my father I'm pregnant and want an abortion, he'll yell at me and cause me emotional abuse." If that is all the Legislature meant by emotional abuse, it might as well have spared itself the effort of passing the statute. This, actually, is JUSTICE ENOCH's view: the statute does not set a very high standard. But it is simply impossible to think, after all the time and effort expended in the enactment of chapter 33, that the Legislature intended nothing more than what JUSTICE ENOCH thinks it did.

Concerning the Legislature's purposes, JUSTICE ENOCH and his associates now assert—remarkably—that they have agreed with me all along. Why, of course, they say, the Legislature intended to encourage parent's involvement in their children's lives and to discourage teenage pregnancy and abortion—just as I have repeatedly stated.[26] Where in *Doe 1* or *Doe 2* did any of those JUSTICES acknowledge this plain legislative intent? Nowhere. Why, to be sure, they now say, parents have funda-

---

**25.** *See United States v. Marks,* 949 S.W.2d 320, 326–327 (Tex.1997) ("While it is true that an attorney's unsworn statements are not evidence, it is not true ... that they have no special significance."); *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997) (per curiam) ("Normally, an attorney's statements must be under oath to be considered evidence.").

**26.** *Ante,* at 306.

mental, constitutional rights to raise their children—citing as their authority my dissenting opinions which they did not join.[27] They profess to hold these views, but they have yet to apply them in a case.

"Abuse is abuse",[28] JUSTICE ENOCH and his associates observe, and that is certainly hard to contradict. But tautologies aside, the fact is, Doe simply did not prove abuse in this case by a preponderance of the evidence. JUSTICE ENOCH mischaracterizes the trial court as holding that because Doe's father will be upset eventually when he finds out about her abortion, she might as well tell him now—that the trial court weighed Doe's father's immediate abuse against his eventual abuse. But that is an unfair mischaracterization of the trial court's view. The minor's guardian stated that Doe was not sure what her father would do if he were told of her situation. How can this statement, which the trial court obviously and reasonably believed, be ignored by anyone who really believes that parents have a fundamental right to be involved in their children's decisions? The answer is that the guardian's statement can be disregarded only by someone bent on denying parental notification in every case.

## VI

This is the Court's third parental notification case in less than two weeks. It should begin to take stock of what has happened in these past few days. The Court has:

- construed a major statute, the Parental Notification Act, without once referencing its legislative purposes and history;
- construed the Act without benefit of the views of the Attorney General or anyone else who participated in the drafting and enactment of the legislation;

- determined the appellate standard of review without briefing of any kind; and

- set aside three (reversed once, vacated twice) trial court decisions even though they were based on sufficient evidence, were not an abuse of discretion, and were otherwise free of error—essentially according no deference to the trial court's factual determinations

- in a fourth case, summarily reversed the lower courts without explanation and ordered an application granted.

Further, parental notification cases have completely exhausted the Court's resources for the past three weeks, and no relief is in sight. Though the Court was understandably under intense time pressure to rule on these appeals, it should give serious consideration to where its decisions are leading. Fourteen years ago Justice O'Connor complained that the United States Supreme Court's abortion decisions "have already worked a major distortion in the Court's constitutional jurisprudence."[29] This Court's parental notification decisions are distorting its substantive and procedural jurisprudence and dominating its docket in ways that can never be reconciled in other cases.

\*  \*  \*  \*  \*

The trial court considered Doe's application sensitively and sympathetically and reached a reasoned conclusion, which this Court abruptly sets aside. Not one parental notification ruling that has reached us has the Court let stand. Today's ruling is no more defensible than *Doe 1(I)*, *Doe 1(II)*, and *Doe 2*, no less contradictory of the Legislature's intent, and no less destructive of parental and familial rights. I dissent.

---

**27.** *Ante,* at 307.

**28.** *Ante,* at 307.

**29.** *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 814, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) (O'Connor, J., dissenting).

Justice OWEN, dissenting.

A majority of the Court has failed to agree on the what the Legislature intended in section 33.003(i) of the Family Code when it used the term "emotional abuse," which is not defined in Chapter 33. I would apply the definition employed by the Legislature in section 261.001 of the Family Code. A majority of the Court has also failed to agree on the judgment that this Court should render, even though a majority of the Court does agree that there was no error in either the court of appeals' judgment or the trial court's judgment. Because the interest of justice does not require a remand in this case, I would affirm the court of appeals' judgment. Accordingly, I dissent.

## I

Jane Doe contends in this Court that she established as a matter of law that notification of one of her parents of an impending abortion may lead to her emotional abuse. She has never been physically abused by either of her parents, and there was no indication that she thought that either of her parents would physically abuse her if they were notified that she was seeking an abortion. However, Jane Doe testified that her father had "become physical" with her mother when he was intoxicated, sometimes because of something that Jane Doe had done. Jane Doe said that she feared that if her father were notified, her mother would be subjected to physical abuse, and that would amount to emotional abuse of Jane Doe. Jane Doe similarly said that she feared that notification of her mother would result in physical abuse of her mother, and correspondingly to emotional abuse of Jane Doe, because her mother would inform her father of Jane Doe's pregnancy and of her intention to have an abortion. This was the only evidence regarding emotional abuse.

The Legislature chose to use the words "emotional abuse" in section 33.003(i). The Legislature did not use the term "emotional distress," even though there is a considerable body of law from this Court regarding emotional distress. This indicates that the Legislature meant emotional abuse to mean something other than severe emotional distress, which this Court has said is "distress that is so severe that no reasonable person could be expected to endure it," and includes "all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999).

Although the Legislature did not define "emotional abuse" in section 33.003, it has done so elsewhere in the Family Code. "Abuse" includes "mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning." TEX. FAM.CODE § 261.001(1)(A). "Abuse" also includes "causing or permitting the child to be in a situation in which the child sustains a mental or emotional injury that results in an observable and material impairment in the child's growth, development, or psychological functioning." *Id.* § 261.001(1)(B). These definitions appear in the chapter of the Family Code that requires a person to make a report to specified authorities when "a child's physical or mental health or welfare has been adversely affected by abuse or neglect." *Id.* § 261.101(a). Courts should be guided by those definitions in construing and applying section 33.003(i) of the Family Code for at least two reasons.

First, we have from the Legislature a clear statement of what it considers to be emotional abuse of a minor. It seems that, rather than fashioning its own definition, a court should apply the Legislature's definition of "abuse" when interpreting other provisions of the same Code unless there is a good reason for not doing so. Deference to the Legislature's definition of emotional abuse is appropriate in interpreting section 33.003(i) because there is some symmetry between the requirement to report abuse

and the bypass of parental notification if there may be abuse. Section 261.001 attempts to set forth concrete boundaries as to when a person is required under section 261.101 to report abuse. *See* TEX. FAM. CODE §§ 261.001(1), 261.101(a). Similarly, section 33.003 attempts to set boundaries as to when a court is required to deny a parent the knowledge that his or her child is about to undergo an abortion. Imposing an affirmative obligation to report emotional abuse and the bypass of parental rights because of potential emotional abuse are matters that the law does not treat lightly.

Second, for the reasons articulated in Justice Gonzales's opinion, it is sometimes difficult to define what constitutes an emotional injury. *See* 19 S.W.3d at 301. The Family Code attempts to give objective standards for determining when there has been emotional abuse. The abuse must be "observable and material" and it must impair "the child's growth, development, or psychological functioning." TEX. FAM.CODE § 261.001(1)(B). This objective definition is particularly appropriate in the context of the relationship between parent and child. A parent must have wide latitude to exert influence over and to discipline a child. Often, influence or discipline is intended to and does cause emotional distress. But, emotional distress of that nature cannot be the basis for denying a parent information as basic as the fact that his or her child is pregnant and intends to have an abortion.

In light of the Legislature's determination of what rises to the level of emotional abuse of a minor, there is no evidence in the record that Jane Doe may be subjected to emotional abuse. Further, the trial court was not required to assume, as a matter of law, that if Jane Doe's mother were notified that her daughter was about to have an abortion, her mother would then tell her father. While there may be more than a scintilla of evidence that Jane Doe's mother would convey that information to her father, the evidence was not conclusive. (The Court is not confronted with a situation in which the minor's parents have divorced and both have been appointed conservators. *See* TEX. FAM. CODE § 153.076 (requiring that an order appointing both parents conservators must reflect that "each parent has a duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child"). The constitutionality of section 153.076 if applied in parental notification matters is questionable in light of *Hodgson v. Minnesota,* 497 U.S. 417, 450–52, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990).)

Finally, the evidence of physical abuse of Jane Doe's mother was not so direct, clear, and positive that a trial court was required to conclude as a matter of law that if one of Jane Doe's parents were notified, then Jane Doe may be emotionally abused. Jane Doe did not explain what she meant when she said that her father had "become physical" with her mother. She did not describe any of the incidents in which she believed that her father had abused her mother.

In sum, there was legally sufficient evidence to support the trial court's failure to find that notification of a parent may lead to emotional abuse of Jane Doe, and Jane Doe did not establish her contentions as a matter of law.

## II

I joined the Court's judgment in *In re Jane Doe,* 19 S.W.3d 249 (Tex.2000) (*Jane Doe I*), remanding that case to the trial court for further proceedings. Jane Doe 1 contended that she was "mature and sufficiently well informed to make the decision to have an abortion" within the meaning of section 33.003(i), and she offered more than cursory evidence in an attempt to support her contention. Prior to the decision in *Jane Doe I,* no Texas court had interpreted "sufficiently well informed," at least not in an opinion that was publicly available. Courts in other jurisdictions have not agreed on the type of showing necessary to prove that a minor is "suffi-

ciently well informed" or the type of evidence that bears on the inquiry. *Compare In re Anonymous 2*, 253 Neb. 485, 570 N.W.2d 836, 839 (1997), *with In re Anonymous*, 660 So.2d 1022, 1023 (Ala.Civ.App. 1995). I therefore concurred with the Court that in the interest of justice, Jane Doe 1 and the trial court should have the benefit of this Court's interpretation of "sufficiently well informed."

The provision in section 33.003(i) regarding physical, sexual, or emotional abuse is a different matter. Although individual justices on this or other courts may disagree whether particular facts establish abuse as a matter of law, the terms "physical abuse" and "emotional abuse" have clear connotations from the standpoint of what evidence is relevant to the inquiry. Practitioners understand what type of evidence they must marshal. Jane Doe 3 had ample opportunity through her counsel and her ad litem to offer evidence of potential abuse. The fact that Jane Doe 3 did not meet her burden of proof does not require a remand.

Nor does the fact that Jane Doe 3 argues in this Court that she is mature and sufficiently well informed to make the decision to have an abortion support remanding this case for another hearing based on the decision in *Jane Doe I*. Jane Doe 3 made virtually no attempt in the trial court to prove that she was mature and sufficiently well informed. Her testimony focused almost exclusively on whether she might be subjected to emotional abuse if one of her parents were notified. Under these circumstances, the interest of justice is not served by a remand.

## III

A brief word about two of the opinions in this case is in order. I note that both JUSTICE HECHT's and JUSTICE ENOCH's opinions rely on thoughts and subjective conclusions that they ascribe to the trial court

based on their widely divergent views of what motivated certain questions that the court posed to Jane Doe 3 and vague statements that the court made during the hearing. JUSTICE ENOCH goes so far as to make repeated assertions about what the trial court believed. Those assertions are wholly unsupported by the record. But even had the trial court made unequivocal statements during the hearing, it would be impermissible to rely upon such statements. Appellate courts are "not entitled to look to any comments that the judge may have made" during a bench trial to determine the basis for its ruling. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984). We should not be reviewing what we think the trial court did or did not believe but rather the trial court's judgment and whether there is evidence to support the trial court's express and any omitted findings and conclusions that are necessary to support that judgment.

\* \* \* \* \*

I join in parts I and II of JUSTICE GONZALES's opinion, but for the reasons considered above, I would affirm the judgment of the court of appeals. I therefore dissent.

Justice ABBOTT, dissenting.

While I concur with much of Justice Hecht's opinion, I write separately to emphasize a single point. When it enacted the Parental Notification Act, the Legislature made the trial court—not the Texas Supreme Court—the finder of fact. As it concerns the trial court's fact findings in this case, the Texas Supreme Court's role is limited to reviewing those findings under a legal sufficiency analysis.

In this case, the trial court did not find that notification of one of the minor's parents "may lead to physical, sexual, or emotional abuse of the minor." Although the record could support a trial court's conclusion to the contrary,[1] the trial court did not find to the contrary. We are thus left with

1. On this point, Justice Hecht and I differ.

the single task of determining whether the record establishes as a matter of law that notification may lead to such abuse. Notwithstanding Justice Enoch's high rhetoric, the record simply does not establish that proposition as a matter of law.

For the reasons discussed in Justice Hecht's opinion, I would affirm the court of appeal's judgment which affirms the trial court's decision.